[No. 13488.   In Bank. — November 26, 1890.]

JOHN KRELING, RESPONDENT, *v.* HENRY MULLER, APPELLANT.

STREET ASSESSMENT — ACT OF 1885 — LIMIT OF POWER OF ASSESSMENT. — Under the act of 1885 in relation to street improvements, a lot cannot be charged for work called for by one resolution of intention and order in a greater sum than one half the value of such lot upon the preceding assessment roll for municipal purposes; and it makes no difference that the work called for by the resolution and order is split up into separate contracts and assessments.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion.

*D. H. Whittemore,* for Appellant.

*H. H. Lowenthal,* for Respondent.

HAYNE, C. — This was a suit to foreclose the lien of a street assessment for $145. The trial court gave judgment for the plaintiff upon demurrer to the amended answer, and the defendant appeals.

The assessment in suit was for grading, macadamizing, etc., Noe Street, from Twenty-fourth Street to Twenty-sixth Street, and the complaint alleges that the various steps leading up to and including an assessment

LXXXVI. CAL.—30

were duly taken. The amended answer sets up, in substance, that the resolution of intention included other work than that for which the assessment sued on was made, viz., sewering the street for the two blocks mentioned, and work upon adjacent property; that the sum for which the defendant's lot has been and will be charged, upon the plaintiff's theory, amounts to more than one half the sum for which it was assessed upon the preceding assessment roll for municipal taxation; and that he gave no consent to the imposition of such a burden.

The law upon which the defendant relies is contained in the following provisions of the act of 1885, viz.: —

Section 3 (p. 149): "Whenever the estimated or actual cost of any work contemplated or ordered to be done by the city council, and chargeable, under the provisions of this act, against any lot or lots of land, or the owner thereof, shall exceed one half of the assessed value of such lot or lots as borne upon the last assessment roll whereon it was assessed, made for the levying of taxes for municipal purposes, the amount of the cost of said work, exceeding said one half of the assessed value of said lot or lots, shall be paid out of the city treasury, unless the owner of such lot or lots shall, in writing, signed by himself or his authorized agent, consent that the whole expense of said improvement may be made a charge against said lot or lots."

"Sec. 7. Subd. 1. The expenses incurred for any work authorized by section 2 of this act . . . . shall be assessed upon the lots and lands fronting thereon, except as hereinafter specifically provided; each lot or portion of a lot being separately assessed, in proportion to the frontage, at a rate per front foot sufficient to cover the total expenses of the work. But wherever the said assessment upon any lot or portion of a lot would exceed one half the valuation of said lot or portion of a lot as it was last assessed for municipal taxation, then, unless

the owner or his attorney in fact shall have previously filed with the superintendent of streets a written waiver of the partial exemption herein provided, the assessment and the lien thereof upon said lot or portion of a lot shall be only to the amount of one half of said last preceding municipal valuation, and the proper remainder of said assessment shall be assessed to the city and be payable out of the city treasury." (Page 152.)

The position of the appellant is, that, under the above provisions, the defendant's lot could not be assessed in a greater sum than one half of its value upon the preceding assessment roll for all the work called for by the resolution of intention relating to the property in question; while the position of the respondent is, that inasmuch as the work was let in separate contracts, and separate assessments were made, it was sufficient, if no one of said assessments exceeded one half of the assessed value for municipal taxation. All other questions have been waived. A stipulation has been filed containing the following provision: "It is hereby stipulated and agreed that the only question for the court to decide is, Can the city, under the provisions of the act of 1885 (Stats. 1885, p. 147), order several different kinds of work in one order and notice of intention, and assess the owners of the property fronting on the work more than fifty per cent of the assessed value of their lots, if the work be let at different times by separate contracts, and separate assessments be made therefor? "

It is apparent that if this question be decided in favor of the appellant the city is liable for the amount of the exemption; and since the act purports to apply to all the municipalities of the state, and as there must be in the various cities and towns a large quantity of property to which the decision would apply, it is obvious that the question is one of importance. Having this in mind when the record was first sent to us for examination, we recommended that the case be set down for reargument,

and that the city and county attorney be notified, which was done. No additional argument, however, has been made. The city and county attorney, after examining the briefs, has declared himself satisfied with the argument of the respondent; and the parties directly interested have resubmitted the case upon the same briefs. It is to be noted, with reference to the stipulation referred to, that it does not expressly say that if the question be decided in favor of the appellant the judgment is to be reversed, and if in favor of the respondent, to be affirmed. But we think that this is implied; for the court would not examine a mere moot question, nor do we suppose that counsel would attempt to present such a question. It is to be further observed that the question is somewhat broadly stated in the stipulation. Its language might include a case where the same resolution of intention called for work in different and distant localities. But it is hardly necessary to say that in such case the improvement of one locality has no relation to or dependence upon the improvement of the other, and that the cost of the former would not be chargeable upon the latter. And the provisions quoted exclude such a case; for the language is, "whenever the estimated or actual cost of any work contemplated or ordered to be done by the council, *and chargeable* under the provisions of this act upon any lot," etc. And, accordingly, we construe the stipulation to refer to work in one locality, and affecting the property of the defendant.

With reference to the question as thus limited, we think that the property owner cannot be made liable for more than fifty per cent of the assessed value of his property for work called for by one resolution of intention and order. The language of the statute indicates this. Each of the provisions quoted has a direct relation to the question. One is to the effect that the excess mentioned shall be paid by the city. The other is, in substance, that such excess shall not be assessed upon the

lot, but shall be assessed to the city.    These two provisions must be read together, and they mutually depend upon each other; for what the city is to pay is not to be paid by the property owner, and what is to be assessed to the property owner is not to be assessed to or paid by the city.    Now, the language of the first provision is, " any work *contemplated or ordered*," and chargeable, etc. It does not say, " any work contracted for, or for which an assessment may be made."    And it would be straining the language to say that it does not mean the work contemplated by the resolution of intention, and ordered by the order, but such portion thereof as should be let out by a separate contract, and for which a separate assessment should be made.    We do not think that the language should be strained to bring about such a result. The evident purpose was to provide a safeguard for the property owner.    It is a matter of judicial history that at least once it was attempted to make the property owner personally liable for a deficiency which remained after taking his entire lot for the cost of an improvement.    And while this attempt was defeated (by a divided court), it still remained possible to take the whole property.    It is just that there should be some limitation in this regard.    The theory of local assessments for local improvements requires it.    For while the property owners of the locality are more benefited by the improvement than the other inhabitants of the city, they would not be more benefited if all their property in the locality should be taken.    In such case, they would be in exactly the same condition as the other inhabitants of the city, so far as benefits are concerned, but in a far worse condition with reference to the burden.    Some limit, therefore, is demanded by the theory of such assessments, and by common justice; and the limitation of fifty per cent of the assessed value seems a fair one.

Now, the act expressly provides that its provisions

"shall be liberally construed to effect the ends of justice."
And we do not think that the language should be strained
in order to render a just and salutary provision value-
less, by permitting the work to be split up into parts,
and allowing the full limit to be taken out of each part.
The policy of the act in relation to accepted streets does
not (as we were at first inclined to think) make against
our conclusion; for it is expressly provided, by section
26, that "the city council may, in its discretion, order
that the whole or any part of the cost and expense of
any of the work mentioned in section 2 of this act to be
paid out of the treasury of the municipality." And what
may be done directly may be done by the indirect method
above shown. We think, therefore, that the question
submitted must be resolved in favor of the appellant,
and that under the stipulation the judgment must be re-
versed.

It is proper to add that no question is presented as to
whether the provisions referred to cover the case of work
called for by *different* resolutions or orders, made either
at the same time or at intervals. Nor is any question
before us as to the way the assessment should be made
up; that is to say, whether the fifty per cent for which
the property is liable is to be distributed equally among
the several assessments, or whether the one which hap-
pens to be made first is to take the whole sum, if it
amounts to so much, leaving the others to be paid by
the city. The stipulation precludes the court from de-
termining these questions; and we neither express nor
intimate any opinion concerning them. We merely say
that, whatever may be the result in the respects men-
tioned, our conclusion as to the question submitted would
be the same.

We advise that the judgment be reversed, and the
cause remanded, with directions to overrule the demur-
rer to the amended answer.

BELCHER, C. C., and FOOTE, C., concurred.

The Court. — For the reasons given in the foregoing opinion, the judgment is reversed, and the cause remanded, with directions to overrule the demurrer to the amended answer.