### VILLAGE OF KENT et al. v. UNITED STATES ex rel. DANA.

(Circuit Court of Appeals, Sixth Circuit. January 7, 1902.)

#### No. 991.

1. VILLAGES—TAX TO PAY INTEREST ON INDEBTEDNESS—OHIO STATUTE.

Rev. St. Ohio, § 2683, provides that a village council "may levy taxes annually, * * * [subdivision 22] to pay interest on the public debt of the corporation and to provide a sinking fund therefor a sum sufficient to satisfy the interest as it accrues annually, to be applied to no other purpose." Subdivision 24 provides that "the council shall determine the amount to be levied for each of the purposes herein specified," and section 2689a limits the total levy to eight mills. *Held*, that the word "may," as used in section 2683, must be read "shall," so far as it relates to subdivision 22, and that the council had no discretion, as against a holder of valid bonds of the village, to refuse to levy the amount required to pay the annual interest thereon, not exceeding eight mills, nor to divert any part of such amount to other purposes, notwithstanding the fact that the remainder of the levy might be insufficient to pay the current municipal expenses of the village.

2. SAME—MANDAMUS TO COMPEL PAYMENT OF INTEREST—DEFENSES.

It is no defense to an action for a writ of mandamus to compel a village to apply so much of such levy as is necessary to pay a judgment recovered against it on interest coupons that such application would leave the village without sufficient funds for ordinary municipal purposes, in view of Rev. St. Ohio, § 2687, which authorizes the levy of an unlimited tax by the village for any authorized purpose by a vote of its electors at a special election which the council is empowered to call.[1]

---

[1] Mandamus to enforce payment of judgment against municipality, see note to Holt Co. v. National Life Ins. Co., 25 C. C. A. 475.

In Error to the Circuit Court of the United States for the North-ern District of Ohio.

For opinion below, see 107 Fed. 190.

This is an action in mandamus. It was brought in the circuit court in November, 1900, by the filing of a petition on the relation of Edward Dana against the village of Kent, Ohio, and its council, clerk, and treasurer. The petition alleged that Dana had recovered a judgment in the circuit court against the village of Kent on certain interest coupons maturing in 1896 and 1897, representing certain installments of interest on 25 bonds, of $1,000 each, issued by the village in 1892, and containing a recital that their purpose was to refund and extend the time of payment of certain general fund bonds theretofore issued, which, from its limits of taxation, the village could not pay at maturity. It appears that there was a sum of little less than $2,500 in the hands of the treasurer of the village, which had been levied for the purpose of paying the interest on the said bonds in each of the years 1892 to 1895, inclusive. An alternative writ of mandamus having been issued, the village, in its answer, set up that said sum of money was on hand, levied and collected as aforesaid, under the supposed authority of the act of April 17, 1891, of the legislature of Ohio, authorizing the village council of any village which at any federal census may have a population of not less than 3,309, nor greater than 3,320, to borrow money and issue bonds for the purpose of making certain improvements; that the village authorities, on discovering said act to be unconstitutional and invalid, had ceased to make any extra levies for the purpose of paying the interest thereon; that said fund was ready to be paid as the court might order. Said sum of little less than $2,500 was ordered to be paid over to the relator, and no controversy is now made about the same. As to making provision for the payment of such part of the judgment as might remain unsatisfied after applying the said fund, the answer alleged, in substance, that, aside from said interest fund, there are no funds in the treasury legally applicable to the payment of said judgment; that Kent is, and for more than 10 years last past has been, a village of the first class, limited by the law of Ohio to a maximum levy for village purposes of eight mills on the dollar; that no vote for increasing the same in accordance with the law has ever been had; that on or before the first Monday in June, 1900, the tax of eight mills was duly levied for that year, and its distribution provided for according to law among the several departments of the village in proportion to their needs, diversion thereof being forbidden by law; that the amount which would accrue therefrom in addition to all other financial resources of the village would fall short of the amount required for the pr per maintenance and ordinary and current expenses necessary for carry-ing on the government of the village; that the revenue of the village arising from such eight-mill levy for the year 1901, the revenue of the village for 1900, and from any and every other source of revenue, will be insufficient to defray the ordinary, current, and necessary governmental expenses of said village for said period; and that no part of said revenues can be di-verted for the payment of plaintiff's judgment without preventing the vil-lage from meeting its ordinary, current, and necessary governmental ex-penses. This answer was demurred to. The court sustained the demurrer, and, no further pleading being filed, a peremptory writ of mandamus was issued, requiring the payment to said Dana of said interest fund of little less than $2,500, and the issue of a further peremptory writ requiring the council, at the time of making the annual levy for 1901, to provide in said levy for such amount as would be necessary to pay the balance of the judgment, and to then and there provide for the distribution and appropria-tion of said tax to the payment of such balance, and to proceed without undue delay to cause said tax to be collected according to law, and the proceeds to be applied to the payment of the balance of said judgment. No objection or exception was taken to the application of said fund on hand. That part of the order relating to the levy and application of the tax for the year 1901, and requiring the payment of the proceeds of such levy on the balance of said judgment, was duly excepted to.

W. E. Cushing, for plaintiffs in error.

H. H. Harris, for defendants in error.

Before LURTON and DAY, Circuit Judges, and WANTY, District Judge.

DAY, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

The principles which shall control in determining the right of a creditor to have a mandamus against a municipal corporation for the purpose of requiring a tax for the payment of a judgment were fully discussed in a recent case before this court. City of Cleveland v. U. S. (decided at this term) 111 Fed. 341. The opinion of Judge Lurton in that case is so full and comprehensive that we are required to do little more now than to apply the principles therein enunciated to the facts of the case in hand. Judge Lurton said:

"It must, at the outset, be conceded that a mandamus cannot be awarded to compel the mayor and council of the plaintiff in error to levy any tax which they were not authorized to levy by the law of the state from which they derive their powers. The office of such a writ is not to create new duties, but to compel the discharge of those already imposed by the municipal law of the state. In other words, the power to levy the tax which the relator seeks to compel must exist in some legislation, or be plainly implied from some local statute or charter." Carrol Co. Sup'rs v. U. S., 18 Wall. 71, 77, 21 L. Ed. 771; U. S. v. Macon Co., 99 U. S. 582, 591, 25 L. Ed. 331.

Our first inquiry, therefore, is, do the statutes of Ohio confer upon the village of Kent power to levy a tax as the relator seeks to compel it to do for the satisfaction of his judgment? The Ohio statutes necessary to be considered in this connection are sections 2682–2684, 2689a, Rev. St. These sections are as follows:

"Sec. 2682. Rates of Taxation in Cities and Villages for General Purposes. The council of a city or village shall have power to levy, annually, for the general purposes of the corporation, such amount of taxes, on each dollar of valuation of taxable property in the corporation on the tax list, as may be determined upon by it, not exceeding the following rates: In a village, one-half of one mill. In a city of the first or second grade of the second class, one mill. In a city of the third grade, or third grade a, or fourth grade of the second class, two mills. In a city of the first grade of the first class, four and one-half mills. In a city of the second grade of the first class, two mills. In a city of the third grade of the first class, two mills.

"Sec. 2683. Levies for Special Purposes. In addition to the taxes specified in the last section, the council in each city and village may levy taxes, annually, for any improvement authorized by this title, and for the following purposes: (1) For the real estate and right of way for any improvement authorized by this title. (2) For sanitary and street cleaning purposes, and for street improvements and repairs. And in cities of the second grade of the first class, such part of the funds raised for any of these purposes as the council deems necessary shall, upon the recommendation of the board of improvements, be appropriated monthly for keeping in repair the paved streets of such cities. (3) For improving highways leading into the corporation. (4) For wharves and landings on navigable lakes and rivers, and keeping the same in repair. (5) For constructing levees and embankments, and keeping the same in repair. (6) For constructing and maintaining bridges. (7) For improving any water course passing through the corporation. (8) For the erection and maintenance of infirmaries, and support of

the out-door poor. (9) For the erection and maintenance of workhouses. (10) For erecting, enlarging, or improving corporation prisons. (11) For the erection of houses of refuge and correction, and for the expense of maintaining and administering the same, above the receipts arising from the labor of persons confined therein, such sum as may be necessary to meet the same. (12) For the erection and repair of market houses, and for lighting, watching, and cleaning the same. (13) For erecting, enlarging and improving hospitals. (14) For erecting, enlarging, and improving halls and public offices. (15) For the erection of school buildings, and such rate as may be prescribed by law for schools and schoolhouse purposes. (16) For the erection of buildings required by the fire department, the construction of reservoirs, the purchase of steam or other fire engines, and other apparatus, and for keeping the same in repair, and for the support of the fire department. (17) For erecting, enlarging, and improving water works, and for supplying the corporation with water. (18) For erecting, enlarging, and improving gasworks, and for lighting the corporation. (19) For grounds for cemeteries and park purposes, inclosing, improving, embellishing, enlarging and keeping the same in repair. (20) For the construction and repair of sewers, drains, and ditches; and where the corporation is divided into sewer districts the levy shall be by such districts. (21) For the payment of the marshal and police authorized by this title. (22) To pay the interest on the public debt of the corporation and to provide a sinking fund therefor, a sum sufficient to satisfy the interest as it accrues annually, to be applied to no other purpose. (23) For the purpose of keeping and maintaining a free public library and reading room; but no tax shall be levied for this purpose unless a suitable lot and building therefor, supplied with library furniture and fixtures, shall first be donated or leased to, or rented by the corp ration. (24) The council shall determine the amount to be levied for each of the purposes herein specified, and such part thereof must be placed on the tax list and collected annually, as it shall by ordinance prescribe.

"Sec. 2684. Construction of Limitations. The limitations contained in section twenty-six hundred and eighty-two shall not be construed to prohibit special assessments for improvements provided for by this title, nor the levy of a tax to raise means for the payment of the principal and interest of the debts of the corporation, nor of any tax authorized by law for special purposes."

Section 2689a contains a general provision as to villages of the first class in Ohio,—that the aggregate of all taxes levied or ordered by such village, including the levy for general purposes above the tax for county and state purposes, and excluding the tax for school and school-house purposes, shall not exceed in any one year eight mills.

The plain reading of this section of limitation, as well as the construction put upon it by the supreme court of Ohio, makes it applicable to all village taxes, general and special, and requires that they shall be kept within the limit of eight mills on each dollar of the value of the property as valued for taxation on the county tax list. State v. Humphrey, 25 Ohio St. 520; State v. Strader, 25 Ohio St. 527; Cummings v. Fitch, 40 Ohio St. 56; City of Cleveland v. Heisley, 41 Ohio St. 670. The relator in this case does not seek to require a levy exceeding eight mills for municipal purposes. The contention is that out of the tax levied and collected within this limitation an amount sufficient to pay the judgment of the relator for interest upon the bonds must first be paid. These bonds were issued under section 2701 of the Revised Statutes, authorizing the issue of bonds to extend the time of payment of indebtedness which, from its limits of taxation, the corporation is unable to pay at ma-

turity. By the judgment rendered and affirmed in this court (Village of Kent v. Dana, 40 C. C. A. 281, 100 Fed. 56), the validity of the bonds is conclusively established, and the exact question is, is there power in the city council to pay these bonds out of the levy permitted by the statute, and are they required to exercise this power for the benefit of the creditor? In Ralls Co. Ct. v. U. S., 105 U. S. 733, 26 L. Ed. 1220, the supreme court said:

"It must be considered as settled in this court that, when authority is granted by the legislative branch of the government to a municipality or subdivision of a state to contract an extraordinary debt by the issue of negotiable securities, the power to levy a tax sufficient to meet at maturity the obligation to be incurred is conclusively implied, unless the law which confers the authority, or some general law in force at the time, clearly manifests a contrary legislative intention."

In this case the claim is that not only is there authority which would be implied from the right to create the debt, but that express power is given in the sections quoted for this purpose. Section 2683 provides that in addition to the taxes specified in section 2682, limiting the taxation of cities and villages for general purposes, the council in each city and village may levy taxes annually for any improvement authorized by this title, and for the following purposes. After reciting a number of municipal purposes, subdivision 22 provides:

"To pay the interest on the public debt of the corporation and to provide a sinking fund therefor, a sum sufficient to satisfy the interest as it accrues annually, to be applied to no other purpose."

Subdivision 24 provides:

"The council shall determine the amount to be levied for each of the purposes herein specified, and such parts thereof must be placed on the tax list and collected annually, as it shall by ordinance prescribe."

Assuming that the subsequent general limitation of section 2689a applies to all municipal taxation, keeping the same within the limit of eight mills in villages of the first class, we find the legislature recognizing, under other sections of the law, such as section 2701, that a corporation may incur a debt, and empowering the council to levy a sum sufficient to satisfy the interest as it accrues annually, —not a part of the interest, nor such portion of the interest as the council may see fit to pay,—but here is direct authority to levy a sum sufficient to satisfy the interest; and it is made apparent that this sum, which must be equal to the interest due, is not to be apportioned among other municipal purposes, for we find the provision that this sum shall be applied to no other purpose. In other words, a distinct fund is here authorized to be raised sufficient to pay the interest on a public debt, not to be diverted or divided among other purposes, but, in terms, directed to be applied to this specific purpose. It is true that in subdivision 24 the council is authorized to determine the amount to be levied for each of the purposes specified in section 2683. These purposes are manifold, and the sums required may be more or less as the council may see fit to determine, as so much for highways, so much for bridges, so much for lighting, erection of schools, etc.; but in au-

thorizing the levy to pay the interest no such discretion is required or permitted to be exercised, but the levy is to be of a sum sufficient to satisfy the interest as it accrues annually. We think it plain that the discretion vested in the council to determine the amount to be levied for each purpose does not apply to a purpose, such as the payment of interest, which is merely a matter of mathematical calculation, not required to be fixed by the exercise of discretion on the part of the council. It is true, this section does not say the village shall levy a tax for this purpose; and it is argued that this statute is merely an enabling one, to permit the council to levy as much for this purpose as they shall see fit. But it is well settled in statutory interpretation that the word "may" may be read "shall." In Rock Island Co. Sup'rs v. U. S., 4 Wall. 435, 18 L. Ed. 419, after a summary of the authorities on the subject, Mr. Justice Swayne says:

"The conclusion to be deduced from the authorities is that where power is given to public officers, in the language of the act before us, or in equivalent language,—whenever the public interest or individual rights call for its exercise,—the language used, though permissive in form, is in fact peremptory. What they are empowered to do for a third person the law requires shall be done. The power is given not for their benefit, but for his. It is placed with the depositary to meet the demands of right, and to prevent a failure of justice. It is given as a remedy to those entitled to invoke its aid, and who would otherwise be remediless. In all such cases it is held that the intent of the legislature, which is the test, was not to devolve a mere discretion, but to impose 'a positive and absolute duty.' The line which separates this class of cases from those which involve the exercise of a discretion judicial in its nature, which courts cannot control, is too obvious to require remark. This case, clearly, does not fall within the latter category."

This language seems to us applicable to the statute under consideration. The power to levy this tax is given for the benefit of creditors, in this case, to meet a demand adjudicated to be right and proper after full trial. It imposes a duty upon the council, which, in our judgment, they are required to exercise so long as they are able to do so within the limit imposed by the law upon the amount of taxation for any given year. We therefore construe this section as though it read, "The council shall levy a sum sufficient to pay the interest on the public debt to be applied for no other purpose." We find nothing in the case cited by counsel for plaintiff in error (U. S. v. Thoman, 156 U. S. 358, 15 Sup. Ct. 378, 39 L. Ed. 450) that is in conflict with this view.

It is contended, however, by the learned counsel for plaintiff in error, that this interpretation results in depriving the village of the means of carrying on its ordinary governmental purposes for which the municipality was organized, and will result in depriving the village of the means of protecting property, keeping order, providing against pestilence, and performing other primary duties which devolve upon municipalities; and it is contended that the case under consideration should be ruled by the case of City of East St. Louis v. Zebley, 110 U. S. 321, 4 Sup. Ct. 21, 28 L. Ed. 162, and of Clay Co. v. U. S., 115 U. S. 616, 6 Sup. Ct. 199, 29 L. Ed. 482. Indeed, it is said, the answer in this case is drawn upon the au-

thority of those cases. In City of East St. Louis v. Zebley a tax authorized for all purposes was limited to 1 per cent. per annum, and the city council were required to levy a tax of three mills on the dollar on each assessment for general purposes, and apply it to the interest and sinking fund on its bonded debt. The supreme court held that the use of the remaining seven-tenths was within the discretion of the municipal authorities, and the court could not control the disposition of it so as to deprive the municipality of the right to use the fund for general purposes of the municipality during any given year. In the case of Clay County v. U. S., 115 U. S. 616, 6 Sup. Ct. 199, 29 L. Ed. 482, the supreme court held that, where the state statute authorized a county to levy and collect a tax of six mills on the dollar for ordinary county revenue, mandamus would not lie to compel the county officers to set apart funds to pay the debt, where by the pleadings it was admitted that the amount of the tax for the current year was necessary for the ordinary current expenses of the county, and recognized the principle that where a tax was authorized within a certain limit for the ordinary county revenues, all of which were required for carrying on governmental purposes, the county authorities could not be compelled to apply part of such fund to the payment of a judgment held by a creditor against it. These cases and similar ones are to be distinguished from the case at bar, in that we have here direct authority in the statute requiring the levy of a tax to pay the interest on the bonded debt. It is not sought to absorb taxes provided for ordinary county or municipal revenue for debt-paying purposes, to the exclusion of their application for the necessary purposes of the county or municipality. The principle of Clay Co. v. U. S. and City of East St. Louis v. Zebley was recognized in the case before this court above referred to (City of Cleveland v. U. S.), in which it was held that the court, in a proceeding for a writ of mandamus, has no power to compel a city to pay a judgment in favor of the relator, so as to control the discretion of the city authorities in making appropriations from the taxes for current municipal expenses. In the case under consideration not only have we an express statute requiring a levy, but the principle underlying those cases is that, where the power of taxation to raise revenue for general purposes is exhausted in providing for the operations of the government, there is no power to disable the corporation from performing its necessary duties by withdrawing from such revenues sufficient sums to pay an indebtedness. There exists in the Ohio statutes ample power to meet such contingencies by a levy of taxes beyond the limit of eight mills imposed by statute. In section 2687 it is provided:

"Sec. 2687. Levy of a Greater Tax to be Submitted to Vote. A greater tax than that authorized by this chapter may be levied for either of the purposes mentioned therein, if the proposition to make such levy, shall have been first submitted to a vote of the electors of the corporation under an ordinance prescribing the time, place and manner of voting on the same, and approved by a majority of those voting on the proposition."

In our judgment, this section is a complete answer to the applicability of those cases which preserve the public revenue for general in preference to debt-paying purposes. We here find power given without limit to levy a tax for any of the purposes mentioned in the chapter, upon the approval of a majority of the electors of the corporation. It cannot, therefore, be said that the corporation has exhausted its tax-levying power, and must stop the wheels of its administration if the fund is to be appropriated for the payment of debts. Electors of the corporation are the real parties in interest. They have never been appealed to, and it is within their power to direct the levy of taxes for the necessary purposes of the corporation, as well as to meet its legal indebtedness. This aspect of the case was passed upon in U. S. v. Sterling (decided in the circuit court of the Northern district of Illinois Jan., 1871) Fed. Cas. No. 16,-388. In that case the relator sought to obtain payment of a judgment on certain bonds held against a municipal corporation in Illinois. In answer to the writ of mandamus it was set up that by the act of incorporation the city authorities were only authorized to levy taxes at the rate of 1 per cent. per annum on the valuation of the taxable property of said city; that the expenses of the city government amounted to $6,000 a year; that the total receipts from taxes, licenses, and fines, being all the source of revenue, were only about $6,000 a year. The charter of the city contained a provision that the city council "may, however, levy and collect a tax for city purposes greater than one per cent. providing the same be done with the consent of the majority of the legal voters of the said city voting at a general or special election ordered for such purpose." On this feature of the case, Judge Blodgett, delivering the opinion, said:

"For the purposes of this case, I do not deem it necessary to discuss the abstract question as to what courts shall do in cases where there is a want of adequate power of taxation to pay a legally contracted indebtedness, as it seems to me the respondent has ample corporate power to meet this emergency. It has power to levy a tax of one per cent. on the assessed value of all real and personal property within its limits. And with the consent of its legal voters, expressed at any general or special election, it has an unlimited power of taxation. It seems, then, clear to me that, if the tax of one per cent. was not sufficient to raise the amount needed to meet this liability, it was the duty of the city authorities to call an election, and require its voters to vote a sufficient tax for the purpose. The duty of paying municipal debts is as obligatory upon the citizens as upon the officers of the city. Indeed, the city authorities are only the agents of the citizens. Besides, what right had the city officers to expend the entire income of the city from the one per cent. tax in payment of current expenses, and leave this indebtedness unprovided for? Why did they not, from the proceeds of this one per cent. tax, pay the bonds and coupons on which this judgment was rendered, and take a vote as to the expediency of raising a further tax to defray current expenses? The proceeds of this one per cent. tax are not specially set apart and dedicated to the payment of current expenses. The bonds for which this judgment was rendered had been legally issued, and the city authorities and voters were all chargeable with notice that they were due and ought to be paid. They should then have levied and collected an adequate tax in apt time to have the money ready when their obligations matured, and, having failed to do so, are guilty of a breach of duty which the writ of mandamus will compel them to perform."

This seems to us a sound view of the matter. The village has it within its own power to levy ample taxes for all purposes. Where a city has a discretion to levy a tax, yet, where that tax is required for the payment of a public debt, the city may be required to levy a tax if it refuses to do so. City of Galena v. Amy, 5 Wall. 705, 18 L. Ed. 560.

The answer to this feature of the case suggested in the argument was that the council had not required such a vote to be taken, but, as suggested by Judge Blodgett, it has had ample time to do so. Meetings of the electors for the purpose of voting taxes were a part of the earliest form of municipal governments in this country. The council are chosen by the electors. They are a representative body; and, so long as the electors have it within their power to levy additional taxes, the dire consequences predicated from the appropriation of the general revenue to debt-paying purposes cannot follow, unless such result shall flow from the refusal of the voters to exercise the power clearly conferred by statute.

We are of the opinion that the court below did not err in issuing a writ of peremptory mandamus, and its judgment will be affirmed.