[S. F. No. 5140.  In Bank.—April 9, 1909.]

GEORGINA OSTRANDER, Appellant, v. CITY OF RICH-MOND et al., Respondents.

STATUTES—CONSTRUCTION—WORD "MAY," WHEN AND WHEN NOT MAN-DATORY.—While the courts have never hesitated to construe the word "may" in a statute as "must" or "shall," when the context and the policy of the law demand that interpretation, yet the legislative intention must plainly appear before such judicial construction will be made, and if no special reason for a mandatory construction of that word appears, it will be construed as conferring merely a discretionary power.

ID.—CONSTRUCTION OF VROOMAN ACT—MODE OF ASSESSMENT—DISCRE-TIONARY POWER OF COUNCIL TO ADOPT FRONT FOOT OR DISTRICT PLAN.—The word "may," as used in the Vrooman Act, as amended in 1905, in relation to the adoption of the district plan, providing that in certain cases specified the city council "may" make the expense of such work or improvement chargeable upon a district which it shall declare to be benefited, confers merely a discretionary power upon the council, which is not mandatory, and notwithstanding more than one half of the assessed value of an improvement would authorize the district plan, the council has discretion to adopt the front foot plan instead of the district plan, even to the extent of assessing all the lots fronting on the proposed improvement.

ID.—HISTORY OF VROOMAN ACT—CHANGE FROM MANDATORY STATUTES.—The original Vrooman Act was mandatory in its terms as to the use of the district plan with reference to improvements of an unusually extensive character; but in 1889 the act was amended so as to confer a discretionary power upon the council as to the use of the district plan, which discretionary power was carried into the amendments of 1891 and 1905.

APPEAL from a judgment of the Superior Court of Contra Costa County. Wm. S. Wells, Judge.

The facts are stated in the opinion of the court.

Aylett R. Cotton, for Appellant.

Wm. H. Hart, for City of Richmond, N. M. Blankenship, Superintendent of Streets, and W. Stairly, City Treasurer, Respondents.

Morrison, Cope & Brobeck, for Edgar Mizner & Co., Respondents.

MELVIN, J.—This appeal presents but one question for an answer by this court. That question relates to the interpretation of the word "may" as employed in a statute. The trustees of the city of Richmond passed a resolution of intention to pave Macdonald Avenue in said city. After the proceedings usual in such matters, respondents Edgar A. Mizner & Co. were awarded the contract for the work. Appellant raises no objection to the regularity of the form of the proceedings leading up to and including the letting of this contract, except that the jurisdiction of the board of trustees to order the work is denied because the cost of the proposed improvement will be more than one half of the assessed valuation of the property fronting on Macdonald Avenue along that portion of said street described in the resolution of the board of trustees. Appellant, who is the owner of land fronting on Macdonald Avenue, upon the theory that the trustees have power to act only upon the district plan of assessment and not upon the method usually described as the "front foot" system, prayed for an injunction to prevent further proceedings by the contractors, the city of Richmond, and the officers of the municipality. A demurrer to this complaint was sustained without leave to amend and this appeal is taken from the judgment sustaining said demurrer.

The so-called "Vrooman Act," as amended in 1905, provides among other things that, "Whenever the contemplated work of improvement, in the opinion of the city council, is of more than local or ordinary public benefit, or whenever, according to estimate to be furnished by the city engineer, the total estimated costs and expenses thereof would exceed one half the total assessed value of the lots and lands assessed, if assessed upon the lots or land fronting upon said proposed work or improvement, according to the valuation fixed by the last assessment-roll whereon it was assessed for taxes for municipal purposes, and allowing a reasonable depth from such frontage for lots or lands assessed in bulk, the city council may make the expense of such work or improvement chargeable upon a district, which the said city council shall, in its resolution of intention, declare to be the district benefited by said work or improvement, and to be assessed to pay the costs and expenses thereof." (Stats. 1905, p. 66.) Appellant insists that inasmuch as the "total estimated cost" of the

work exceeds one half the assessed value of the land fronting upon the proposed improvement, the word "may" should be given mandatory force and interpreted as "must" or "shall." While the courts have never hesitated to construe "may" as "must" or "shall" when the context and the policy of the law demanded that interpretation, the legislative intention must plainly appear before such judicial correction will be made. Where, for example, a legislative body is given by law apparently discretionary power to levy a tax for a special purpose and the same body is required to incur the indebtedness to be paid by such tax, the apparent discretion is withdrawn and the word "may" is construed as "must" or "shall." (*Galena* v. *Amy,* 72 U. S. (5 Wall.) 705; *Village of Kent* v. *United States ex rel. Dana,* 113 Fed. 232; *State* v. *Board of Commissioners of Buffalo Co.,* 6 Neb. 454; *People* v. *Board of Supervisors of Otsego Co.,* 51 N. Y. 401; *People* v. *Board of Commissioners of Rio Grande Co.,* 7 Colo. App. 229, [42 Pac. 1032].)

Examining the statute before us, we find no special reason for the construction which appellant desires. Upon its face the act gives an authority which the trustees may or may not exercise. It may be that the "front foot" plan is the only one whereby a just distribution of the burdens incident to the work of improvement may be accomplished. It may well be that in the present instance no land would be benefited save that fronting on Macdonald Avenue. If such be the fact, surely the legislature never intended that the trustees should adopt such plan of assessment as would involve the declaration that a certain district would be benefited by the work, when, as a matter of truth, no benefit whatever would result to a part of the district. Surely it was never contemplated by the legislature that the trustees should stultify themselves for the purpose of providing a district plan of assessment. On the contrary, we must conclude that the legislature intended, by this enactment, to confer a wide discretionary power and that the word "may" as here used aptly contributed its part to the accomplishment of this design.

This conclusion is strengthened when we consider the Vrooman Act historically. As originally drawn, that act imposed a duty upon the trustees, in case the estimated cost of improvement exceeded one half the assessed value of the prop-

erty fronting on the street to be improved. They were re-
quired to order payment of a portion of the expense from
the city treasury. Sections 23 and 26 of the act contained
the following provisions: "Whenever the estimated or actual
cost of any work contemplated or ordered to be done by the
city council, and chargeable under the provisions of this act
against any lot or lots of land, or the owner thereof, shall
exceed one half of the assessed value of such lot or lots as
borne upon the last assessment-roll whereon it was assessed,
made for the levying of taxes for municipal purposes, the
amount of the cost of said work, exceeding said one half of
the assessed value of said lot or lots, shall be paid out of the
city treasury, unless the owner of such lot or lots shall, in
writing, signed by himself or his authorized agent, consent
that the whole expense of said improvement may be made a
charge against said lot or lots." (Stats. 1885, p. 149.)

"And whenever the city council shall order to be done any
of the work mentioned in section two of this act, it shall be
deemed to exercise its discretion mentioned in this section,
and to include an order for the payment out of its treasury
for the excess of any assessment for said work otherwise
chargeable upon any lot, or portion of a lot, over and above
one half of the valuation of said lot, or portion of a lot, in its
last preceding assessment for municipal taxation." (Page
162.) These provisions clearly indicate the policy of the
legislature with reference to street improvements of an un-
usually extensive character. They were not permitted to exist
very long, however, in their mandatory form. In 1889 they
were amended in such a manner as to confer discretionary
power upon city councils (Stats. 1889, pp. 159, 160). By
section 3 it was enacted that "the city council may make the
expense of such work or improvement chargeable upon a
district," etc.; while in section 26 the council was given the
privilege, "in its discretion" of making the cost and expense
of the work a charge against the municipal treasury. (Stats.
1889, p. 170.) By this act a change in legislative policy with
reference to this kind of street work is clearly shown. The
amendments of 1891 (Stats. 1891, pp. 198, et seq.) are similar
to those of 1889 in this respect, and there has been no mate-
rial change wrought by the amendments adopted since that
time. Mr. Finlayson, in his work on "Street Laws of Cali-

fornia," after discussing the act of 1885, as interpreted in *Kreling* v. *Muller*, 86 Cal. 465, [25 Pac. 10], and as amended by the acts of 1889 and 1891, (Stats. 1891, p. 196), writes (at page 34) : "It seems, therefore, that under the act as it now reads, the council may adopt the district assessment plan in those cases where, under the front foot plan, more than half of the assessed value of the lot will have to be taken to pay the expenses of the improvement, or it seems, it may follow the front foot plan even to the extent of taking all the lots fronting upon the proposed improvement." This conclusion we deem logical and correct.

We are convinced, therefore, that there is nothing in the act itself requiring us to give commanding significance to the word "may" and that this view is emphatically supported by the history of the section in which that word is used.

The judgment of the superior court is affirmed.

Angellotti, J., Shaw, J., Sloss, J., and Henshaw, J., concurred.