[Crim. No. 19090. Second Dist., Div. Five. May 28, 1971.]

In re W.R.W., a Person Coming Under the Juvenile Court Law.
KENNETH F. KIRKPATRICK, as Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
W.R.W., Defendant and Appellant.

## COUNSEL

Richard S. Buckley, Public Defender, Kathryn J. McDonald and Laurance S. Smith, Deputy Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Beverly K. Falk, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**REPPY, J.**—In a petition filed February 11, 1970, appellant W. R. W. (the minor) was alleged to be a minor who came within section 602 of the Welfare and Institutions Code[1] in that he committed assault with force likely to produce great bodily injury upon another youth in violation of Penal Code section 245. At a hearing before a referee on March 5, 1970, the petition was amended to allege simple battery in violation of Penal Code section 242 and the petition was sustained, the allegation having been found to be true. The proceedings were continued for disposition. On April 1, 1970, testimony was. taken from one witness, Yolanda Mar, and the case was dismissed by the referee. On April 11, 1970, the minor and his parents received notice of the referee's order. On April 16, 1970, the court reporter was directed by a superior court judge to prepare a transcript of the testimony of Yolanda Mar. On May 1, 1970, that judge ordered a rehearing of the matter. At the rehearing, the court denied the minor's motion to dismiss made on the ground that the rehearing was not ordered within the necessary time limits provided by sections 556 through 559.[2] After taking testimony, the court found that the allegation of the February 11 petition[3] was true and ordered the minor to be placed on probation for six months and to pay $500 restitution. A motion to vacate this order (decree) was denied. The minor appealed from both orders.[4]

The minor contends on appeal that the court was without jurisdiction to

---

[1]Hereinafter, all statutory references, unless otherwise specified, are to the Welfare and Institutions Code.

[2]The court also denied motions made on the grounds that the minor had been subjected to double jeopardy and that there had been a prior dismissal under Penal Code section 1385. Our decision makes it unnecessary to discuss these motions.

[3]There is some question, which we need not decide, as to whether the court sustained the original or amended petition.

[4]The order denying the motion· to vacate, in this instance,. is nonappealable. (3 Witkin, Cal. Procedure (1954) Appeal, § 26, pp. 2170-2171.)

order a rehearing because the order was made after the dismissal of the case had become final under sections 556 to 559.

Section 556 provides in pertinent part as follows: "Except as provided in Section 557[5] all orders of a referee . . . shall become immediately effective. . . . In a case in which an order of a referee becomes effective without approval of a judge of the juvenile court, it becomes final on the expiration of the time allowed by section 558 for application for rehearing, if application therefor is not made within such time and if the judge of the juvenile court has not within such time ordered a rehearing pursuant to section 559." The latter sections read as follows: "A judge of the juvenile court may, on his own motion, order a rehearing of any matter heard before a referee." The time allowed by section 558 for application for rehearing is "10 days after service of a written copy of the order and findings of a referee." It was held in *In re Henley,* 9 Cal.App.3d 924 [88 Cal.Rptr. 458],[6] that "the provision in section 556 rendering the order of the referee 'final' ten days after service of copies of such order deprives a juvenile court of jurisdiction to order a rehearing on its own motion following the end of that period. . . . After expiration of the statutory period, an order for rehearing is beyond the jurisdiction of the juvenile court and, therefore, void." (P. 928. See also *Richard M. v. Superior Court,* 4 Cal.3d 370, 378, fn. 4 [93 Cal.Rptr. 752, 482 P.2d 664].)

 The order for rehearing in the instant case was made after the expiration of the 10-day period. The Attorney General contends, however, that the court's ordering of the transcript of Mar's testimony constituted an application by the court for rehearing with the same effect and time limits as an application for rehearing by a minor under section 558.[7] He logically points out that the determination as to whether or not to

[5]"The judge of the juvenile court . . . may establish requirements that any or all orders of referees shall be expressly approved by a judge of the juvenile court before bcoming effective." (§ 557.)

[6]Although *Henley, supra* (July 23, 1970) was decided subsequent to the rehearing order before us, its holding is applicable to that order because it "did not involve a new constitutional rule that overturned prior decisions [citation], but rather interpreted statutory provisions whose interpretation had previously remained unsettled." (*In re Gladys R.,* 1 Cal.3d 855, 860-861 [83 Cal.Rptr. 671, 464 P.2d 127], regarding another issue.)

[7]The Attorney General also contends that the court's request for the transcript was equivalent to an order establishing a requirement under section 557 (quoted in fn. 5, *supra*), that the referee's order must be expressly approved before becoming effective. However, since a referee's order is effective immediately (§ 556), an order delaying its effectiveness until approved would have to precede it. Also, we do not believe that a transcript request in itself can be said to establish a requirement of approval.

order a rehearing can best be made after an examination of the transcript, and that the transcript may not reach the court within 10 days.[8]

However, this "interpretation" of the statute is a clear departure from the pertinent language of sections 556 and 558.[9] ▮ Where the language of a statute is clear and unambiguous, its meaning plain, and there is no apparent conflict with the legislative intent, there is no need for construction by the court and the courts should not add to or alter that language. (*Vallerga* v. *Dept. Alcoholic Bev. Control,* 53 Cal.2d 313, 318 [1 Cal.Rptr. 494, 347 P.2d 909]; *Caminetti* v. *Pac. Mutual L. Ins. Co.,* 22 Cal.2d 344, 353-354 [139 P.2d 908].) The Attorney General relies on *In re J. R.,* 5 Cal.App.3d 597 [85 Cal.Rptr. 396], in which this division of this court interpreted section 558 to provide that a minor's application for rehearing is deemed denied if not granted within 20 days following the date of the receipt of the transcript, rather than the date of the receipt of the application, admitting that the interpretation "does some violence to the grammar of [the section]." (P. 600-601.) *In re J. R., supra,* involved a portion of section 558 not before us here. We are concerned with the time within which a judge may order a rehearing on his own motion rather than with the time within which the minor's application for rehearing must be deemed denied. The interpretation urged by the Attorney General of the language of sections 556 and 558 pertinent to the issue before us does not merely do "some violence to," but constitutes a complete abandonment of that language.

The holding in *In re Henley, supra,* 9 Cal.App.3d 924, that jurisdiction is lost unless the order for rehearing is issued within 10 days, was made with no mention of the possible effect of an order for the transcript, even though *In re J. R., supra,* 5 Cal.App.3d 597, had been decided several months previously. A court wishing to examine the transcript before deciding whether or not to order a rehearing is not entirely without recourse. It can ask the reporter to read portions of the transcript orally, or, under section 557, can establish a requirement that all or certain types of orders,

---

[8]This is less likely to be the case where the transcript of the testimony of only one witness is requested, as here.

[9]Section 558 provides as follows: "At any time prior to the expiration of 10 days after service of a written copy of the order and findings of a referee, a minor or his parent or guardian may apply to the juvenile court for a rehearing. Such application may be directed to all or to any specified part of the order or findings. If all of the proceedings before the referee have been taken down by an official reporter, the judge of the juvenile court may, after reading the transcript of such proceedings, grant or deny such application. If proceedings before the referee have not been taken down by an official reporter, such application shall be granted as of right. If an application for rehearing is not granted within 20 days following the date of its receipt, it shall be deemed denied."

e.g., dismissals where the petition has been sustained, and perhaps orders in particular cases, must be approved before becoming effective.

Thus, the order for rehearing was untimely if the referee's order was in fact a valid order. The Attorney General contends that the dismissal resulted from a redetermination, on the basis of Mar's testimony of the jurisdictional issue, i.e., whether the minor had struck the other youth in violation of state law (§ 602), and that the redetermination was invalid because it was made in the absence of certain procedural requirements (§ 7.75), and after a reading of the probation report.[10] We do not reach the merits of the contentions of error because the record reveals that the dismissal did not result from a redetermination of the jurisdictional issue.

At the jurisdictional hearing on March 5, after hearing conflicting testimony as to whether the minor had struck the other youth, knocking him down in front of the Mar home, the referee determined that the minor had done so. At the dispositional hearing, Yolanda Mar testified that she had seen the youth fall in her front yard at a time when the minor was in the street entering his car. This testimony was clearly relevant to the jurisdictional rather than dispositional phase of the case. However, we are convinced that the referee's determination of dismissal was not influenced by the Mar testimony. The referee did not announce a reopening of the jurisdictional phase (§ 776), or reverse his prior finding (§§ 702, 775). In fact, during a discussion after Mar's testimony, the referee stated, "that's the only incident that I am convinced of, was what happened in the front yard, not what happened in the bathroom." The minor's attorney then stated: "I was hopeful . . . that . . . perhaps your Honor would reconsider your previous determination." The referee replied as follows: "He positively identified [the minor] as being the one who struck him in the front yard. . . . And that [the front yard incident] was the only incident that I was satisfied was true." The referee then questioned the minor as to his present age, school and career plans, stated that the report

---

[10]In *In re Gladys R., supra,* 1 Cal.3d 855, a determination that the court had jurisdiction was held invalid where the court read the probation report containing matter not relevant to jurisdiction before the jurisdictional hearing. "The history of Welfare and Institutions Code sections 701 [fn. omitted], 702 [fn. omitted], and 706 [fn. omitted] clearly indicates that the Legislature intended to create a bifurcated juvenile court procedure in which the court would first determine whether the facts of the case would support the jurisdiction of the court in declaring a wardship and *thereafter* would consider the social study report at a hearing on the appropriate disposition of that ward. [Fn. omitted.] This procedure affords a necessary protection against the premature resolution of the jurisdictional issue on the basis of legally incompetent material in the social report." (Pp. 859-860.) However, "the court's review of the social report in advance of the jurisdictional hearing would perhaps not require reversal in a case in which the contents of the social study entirely favored the minor. . . ." (P. 861.)

indicated that his only other police contact involved the possession of alcohol, and then said: "In view of the fact that this Minor is now eighteen and I am quite favorably impressed with the parents, I think he is in pretty good hands. . . . I don't even think it is advisable to put him on probation. So I am going to dismiss the case."

Finally, the Attorney General contends that the dismissal was invalid because dismissal is not a proper means of disposition under section 725. That section provides:

"After receiving and considering the evidence on the proper disposition of the case, the court [11] may enter judgment as follows:

"(a) If the court has found that the minor is a person described by Sections 601 or 602, it may, without adjudging such minor a ward of the court, place the minor on probation, under the supervision of the probation officer, for a period not to exceed six months.

"(b) If the court has found that the minor is a person described by Sections 601 or 602, it may order and adjudge the minor to be a ward of the court.

"(c) If the court has found that the minor is a person described by Section 600, it may order and adjudge the minor to be a dependent child of the court."

Section 725 does not list dismissal as one of the possible alternatives. However, the fact that section 725 provides that "the court *may* enter judgment as follows" (italics supplied), rather than *shall,* leaves open the possibility that the court can reject the alternatives listed as not in the best interests of the minor and, in its inherent power, dismiss the case.[12] Section 725 was enacted in 1961 as a part of a recodification of juvenile court provisions. Its predecessor[13] provided that when a court determines that a minor comes within its jurisdiction, by, for example, violating state law, "the court shall adjudge the person to be a ward of

---

[11] A referee has "the same powers as a judge of the juvenile court." (§ 554.)

[12] "May" is ordinarily not to be interpreted as mandatory, but rather as merely permissive or conferring discretion (*Ostrander* v. *Richmond,* 155 Cal. 468, 470 [101 P. 452]; *Roberts* v. *Duffy,* 167 Cal. 629, 638 [140 P. 260].) Our discussion is directed only to the alternative of dismissal, and we do not intend to suggest that the "may" language leaves the court free to make any disposition it pleases. See *In re Bacon,* 240 Cal.App.2d 34, 60 [49 Cal.Rptr. 322], holding that where a minor found to be a person described by sections 601 or 602 is not made a ward of the court, "the court is limited, under the provisions of section 725, subdivision (a), to an order placing the minor on probation" and cannot deprive the parent of physical custody.

[13] Statutes 1937, chapter 369, section 735, page 1037; derived from Statutes 1915, chapter 631, section 2, page 1226.

the juvenile court." Another provision[14] first enacted in 1915, authorized the court, having found a juvenile to come within its jurisdiction, to, at its discretion, admonish him and dismiss the petition. In 1961, the entire juvenile court law, including these sections, was repealed[15] and recodified. No equivalent to the general dismissal provision was then enacted, although it was provided that one of the alternatives available upon a finding that a minor had committed a traffic violation was to "reprimand the minor and dismiss the matter." (§ 564, subd. 1.)[16] ▮ We, of course, are aware of the general presumption that the Legislature, by repeal of a statute, intended to change the law. (*Clements* v. *T. R. Bechtel Co.,* 43 Cal.2d 227, 231 [273 P.2d 5].) However, it will not be presumed that the Legislature intended to overthrow long established principles of law unless that intention is made clear by express declaration or necessary implication. (*County of Los Angeles* v. *Frisbie,* 19 Cal.2d 634, 644 [122 P.2d 526]; *Adoption of Sewall,* 242 Cal.App.2d 208, 226 [51 Cal.Rptr. 367].) Juvenile matters were dismissed at the disposition stage with clear statutory authorization for approximately 45 years. The 1961 recodification did not stop that practice,[17] and we do not feel that the courts have erred in continuing it. ▮ Also, the practical construction of a statute by those whose duty it is to carry it into effect, while not controlling, is given great respect. (*County of Los Angeles* v. *Frisbie, supra,* at p. 643; *Henry* v. *City of Los Angeles,* 201 Cal.App.2d 299, 319 [20 Cal.Rptr. 440].) When it is considered that the "shall" language of section 735 was replaced by the "may" language of section 702, the repeal of section 737 is not a clear dictate that the time-honored alternative of dismissal is no longer a proper means of disposition. ▮ We are greatly influenced by the special place that juvenile proceedings hold in our judicial system. "[T]he proceedings are . . . conducted for the protection and benefit of the youth in question. . . . Thus, a determination whether or not the person committed the particular misdeed charged . . . may not in fact be critical to the proper disposition of many juvenile cases. . . ." (*In re Dennis M.,* 70 Cal.2d 444, 456-457 [75 Cal.Rptr. 1, 450 P.2d 296].)[18]

---

[14]Statutes 1915, chapter 631, section 8, page 1232; Statutes 1921, chapter 512, section 2, page 802; Statutes 1929, chapter 645, section 2, page 1063; Statutes 1933, chapter 842, section 1, page 2211; Statutes 1937, chapter 369, section 737, page 1037.

[15]Statutes 1961, chapter 1616, section 1, page 3459.

[16]"Dismiss the matter" was amended to "take no further action" in 1965.

[17]There is a recital in minor's brief to this effect, the veracity of which was conceded by the deputy attorney general at oral argument.

[18]The *Dennis M.* holding that a preponderance of the evidence rather than reasonable doubt standard of proof could constitutionally be applied in juvenile proceedings was disapproved in *In re Winship,* 397 U.S. 358, 368 [25 L.Ed.2d 368, 377, 90 S.Ct. 1068]. Nevertheless, we feel that the language quoted above is valid when used in the present context.

■ The court is accorded great discretion in its disposition of juvenile matters. ■ It may at any time modify or vacate a dispositional order and may entirely terminate its jurisdiction when it is satisfied that further supervision is unnecessary (§ 775; *People* v. *Sanchez,* 21 Cal.2d 466, 470 [132 P.2d 810]).[19] ■ It would be inconsistent with the liberal termination provisions and the general thrust of the juvenile court law to hold that the referee, at the time of original disposition, could not dismiss the case if he felt that court supervision would be unnecessary and perhaps harmful.[20]

The order (decree) is reversed.

Kaus, P. J., and Stephens, J., concurred.

---

[19]The court apparently has the authority to place a minor on probation, and then set aside that order a short time later (§ 775), although an abuse of this right might be questionable. Thus denying the power to dismiss at disposition would be of little practical consequence.

[20]The Attorney General also contends that the dismissal was improper because the probation officer had not been given prior notice that a dismissal would or might occur, the district attorney was not present, and the minute order did not cite the grounds for the dismissal. We reply briefly to each contention. The probation officer was on notice that a dismissal might occur since dismissal was an established means of disposition, and, in addition, the officer, who was present, made no objection. (See *Richard M.* v. *Superior Court, supra,* 4 Cal.3d 370, 377.) The district attorney has no independent right to appear, and when he does so, with the consent of the court, it is only as the court's assistant. (§ 681.) There is no requirement in the code for specification of reasons for disposition. (See *Richard M.* v. *Superior Court, supra,* at p. 378, fn. 5.) Nonetheless, the reasons for the dismissal are stated on the record.