Filed 7/21/15  In re A.B. CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.B., a Person Coming Under the Juvenile Court Law. | |
| PEOPLE, | E062735 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ401186) |
| v. | OPINION |
| A.B., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Robert J. McIntyre, Judge,* and Walter H. Kubelun, Temporary Judge.† Affirmed.

---

* Retired judge of the Riverside Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

† Temporary judge of the Riverside Superior Court, assigned pursuant to article VI, section 21 of the California Constitution.

Erica Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

A.B., a minor, did not contest a delinquency petition alleging that she had committed a violation of Penal Code section 243, subdivision (d) (battery with serious bodily injury). She appeals after the juvenile court adjudged her a ward of the court, ordered her placed in the youthful offender program, and imposed probation terms. We affirm.

FACTS AND PROCEDURAL HISTORY

In 2014, minor was 16 years old. She had formerly been friends with the victim, another teenage girl.

Starting around November 2, 2014, the victim began receiving repeated calls to her mobile phone. The first time she answered the call, she heard a male voice demanding money, and saying that if she did not pay, he would kill her. The victim asked who was calling; the male told the victim that she knew who it was, and to stop playing games. The caller's telephone number did not appear on the victim's caller-identification display (caller ID); the record referred to these calls as calls from "blocked" numbers. During the following week, the victim received numerous calls from similarly blocked numbers; the victim did not answer the calls. On November 7, 2014, the victim answered a call from a blocked number. She recognized the voice as belonging to the same male who had called and threatened her several days earlier. The male told the victim to go to a particular park at 7:00 p.m. to pay him the money; if she did, then he

2

would leave her alone. The victim thought the voice might be that of her ex-boyfriend, but she was not sure.

The victim decided to go to the park. When she arrived, she saw several students from her high school sitting at some picnic tables. The victim saw a male acquaintance sitting with some other boys. As the victim sat at the picnic table with her acquaintance and the other boys, she saw minor and another boy get up from one of the picnic tables and begin to approach her. The victim stood up immediately and began to walk away because she believed minor was going to cause a problem. Minor followed the victim as she walked away. The victim told minor to stop following her and to leave her alone. However, minor told the victim to come with her, then grabbed the victim by the wrist, and began pulling. The victim told minor to let go, and she tried to pull away. As a result of the scuffle, the victim fell to the ground. Minor grabbed the victim's hair, punched her in the face, and kicked her in the back. Minor used her grip on the victim's hair to force the victim onto her back, and she proceeded to punch the victim in the face 20 to 30 times. Minor also kicked the victim in the face. At some point, the victim lost consciousness, but she was aware that minor continued to hit her and seemed to remember minor taking $20 from her pocket.

The victim heard voices of people around her fading away, and she realized minor and the onlookers had left. The victim eventually got up and walked to a nearby softball field to seek help. The victim sustained numerous cuts, bruises, bumps and swollen features as a result of the attack. She was also lightheaded after her loss of consciousness.

3

The victim told police that she believed the attack came about because the victim's ex-boyfriend was a young man now dating minor.

Minor and some of the bystanders had taken video and photos of the attack and posted them on social media.

The police interviewed minor about the incident. At first, minor said that she was at the park with friends. She claimed that the victim had pulled a knife; minor responded by knocking the knife away and then hitting the victim in self-defense. Minor later changed her story, admitting that she knew some of her friends (including the victim's ex-boyfriend & male acquaintance) had been making the anonymous phone calls to the victim. On the evening of the attack, the victim's ex-boyfriend and male acquaintance called minor to tell her that they had persuaded the victim to come to the park, ostensibly to pay them money. Minor wanted to meet her friends at the park, with the aim of fighting the victim. Minor arrived at the park at 6:30 p.m., and she waited for the victim, who arrived around 7:00 p.m. The victim saw minor, and started to walk away. Minor told the victim to put away her phone and fight. The victim tried to ignore minor. Minor admitted grabbing the victim by the arm and trying to pull her away to an area where there were not as many people about. She admitted that the victim lost her footing and fell to the ground. She further admitted standing over the victim and hitting and kicking her until her friends told her to stop. Minor denied taking any money from the victim, however.

Minor was arrested and held in juvenile hall. In a later interview at juvenile hall, minor related that she had contacted other people to call the victim, and to tell the victim

4

to come to the park. The victim did not know that minor was also going to be at the park. Minor wanted to talk to the victim because she believed the victim was trying to "get with 'her man,'" i.e., to become involved again with minor's boyfriend (the victim's ex-boyfriend). Minor had previously found messages from the victim on her boyfriend's iPad, and minor was angry about the victim communicating with him.

The probation officer reviewed the social media video of the beating. There was a significant disparity in height and weight between minor and the victim; minor was clearly taller and heavier. The video showed minor hitting, punching, and kicking the victim. The victim did not appear to fight back or defend herself. The victim was curled in a fetal position on the ground during the entire video. The blows and kicks that minor delivered were "forceful and brutal." The officer who reviewed the footage wrote, "The beating appeared to be violent and full of rage." Minor stopped the attack only when her boyfriend advised her to "chill." At least three other people who were present during the attack appeared to be recording the incident.

Ultimately, a petition was filed with the juvenile court, alleging minor had committed a felony violation of Penal Code section 243, subdivision (d), battery with serious bodily injury. Minor admitted the allegation. The juvenile court found that minor came within Welfare and Institutions Code section 602, and set a dispositional hearing.

At the dispositional hearing, the juvenile court adjudicated minor a ward of the court. The juvenile court ordered minor (1) to be placed in the youthful offender program (YOP); (2) serve no more than 365 days in custody; and (3) to be placed on probation under specified terms and conditions. There was a 30- to 60-day waiting period for a

YOP placement. The juvenile court set the matter for review every 15 days until minor was successfully placed in YOP. At the second 15-day review, the juvenile court was informed that minor had been placed in YOP and was doing well.

Minor filed a notice of appeal on January 14, 2015.

ANALYSIS

Upon minor's appeal, this court appointed counsel to represent her. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738, setting forth a summary of the facts and proceedings. Appointed counsel asserts that she could discern no arguable issues on appeal, and has requested this court undertake a review of the entire record.

Minor has also been offered the opportunity to file a personal supplemental brief, which she has not done. Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, this court has made an independent review of the entire record, and finds no arguable issues on appeal.

Appellate counsel noted two possible areas of inquiry: (1) whether the juvenile court abused its discretion in ordering minor placed in YOP; and (2) whether the probation terms and conditions imposed were proper. We discern no error or abuse of discretion with respect to either issue.

As to the out-of-home placement in YOP, the dispositional report noted that minor had a number of disciplinary actions at school for fighting, and she was regarded as a bully. Minor's academic performance ranged from satisfactory to poor. She was disrespectful to teachers and staff, she was cited for possession of tobacco products and a

6

"vapor pen," and she often refused to comply with the rules for classroom behavior. Minor reported using alcohol, tobacco, and other drugs, although she denied recent use. In 2013, minor was referred to the school's youth accountability team for felony burglary and misdemeanor conspiracy. In October 2014, minor was placed on a six-month contract with the youth accountability team, under which she was to complete community service, attend school, abstain from drugs and alcohol, and other requirements. Her performance was unsatisfactory. She received a number of suspensions from school during the period of the contract, i.e., for making terrorist threats. She also broke curfew and disobeyed her parents. Minor was discharged from the program in November 2014 after committing the current offense and for noncompliance.

Although minor's mother desired a disposition returning minor to their home, both the mother and the stepfather acknowledged that they had little control over minor. The probation department assessment team agreed: Minor "is beyond control of her parents and in need of a structured supervised environment." The probation report indicated that a suitable out-of-home placement (but near the parents' home) would need to provide, among other things, isolation from the community, on-grounds school, and a structured setting, as well as family counseling, individual or group therapy, a nurturing environment, and coaching in life skills.

"Under Welfare and Institutions Code section 730, the court 'may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced.'" (*In re Bernardino S.* (1992) 4 Cal.App.4th 613, 622.) The court's discretion

7

in selecting the appropriate placement is consequently broad, and it is reviewed deferentially. (See *In re Greg F.* (2012) 55 Cal.4th 393, 411 [juvenile court scheme is designed to give it maximum flexibility to craft suitable orders to rehabilitate a ward]; *In re W.R.W.* (1971) 17 Cal.App.3d 1029, 1037 ["The court is accorded great discretion in its disposition of juvenile matters"]; see also *In re Edward C.* (2014) 223 Cal.App.4th 813, 829 ["A commitment decision is reviewed on appeal for abuse of discretion, indulging all reasonable inferences to support the juvenile court's judgment"].)

The juvenile court here did not abuse its discretion in selecting YOP as an appropriate setting for minor.

The conditions attached to the commitment and probation were also reasonable and proper, i.e., obey all laws, obey parents and probation officer, attend school, notify of any change of address or telephone number, no contact with persons known to be disapproved by the parents or probation officer (*In re Byron B.* (2004) 119 Cal.App.4th 1013, 1018 [Fourth Dist., Div. Two]), obey curfew, pay victim restitution, attend anger management classes, not use prohibited substances, submit to urine testing, and other conditions. "A juvenile court is vested with broad discretion to select appropriate probation conditions. [Citation.] The court may impose any reasonable condition that is 'fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced.' ([Welf. & Inst. Code,] § 730, subd. (b).)" (*In re Antonio C.* (2000) 83 Cal.App.4th 1029, 1033.) The conditions imposed here were reasonable and appropriate.

8

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


McKINSTER

J.

We concur:


RAMIREZ

P. J.


KING

J.

9