[S. F. No. 6749.  In Bank.—April 11, 1914.]

# JAMES H. ROBERTS Appellant, v. DENNIS M. DUFFY et al., Respondents.

CRIMINAL LAW—PAROLE OF PRISONERS—RIGHT TO APPLY TO COMMISSIONERS FOR PAROLE—TIME FOR APPLICATION.—Under the parole law (Stats. 1913, p. 1048) a prisoner who is undergoing a first and only term of imprisonment and who has not been sentenced for life, is entitled, as a matter of right, upon the expiration of one calendar year of his sentence, to make application to the board of parole commissioners for a parole and to be accorded a hearing thereon within a reasonable time thereafter, and the board of prison directors has no authority to adopt a rule postponing the right to make such application for a longer period.

ID.—RIGHT OF PRISONER TO PAROLE—WHETHER EXISTS AS MATTER OF RIGHT.—But a prisoner whose prison conduct during the year has been good is not entitled to a parole as a matter of right. The word "may" in the opening provision of the act that he "may be allowed to go on parole outside the buildings and inclosures" is not to be construed as "must" or "shall" so as to impose a mandatory duty upon the board to parole him.

ID.—MATTERS FOR CONSIDERATION IN PASSING UPON APPLICATION FOR PAROLE—DISCRETION OF BOARD.—The intention of the legislature was, while giving any prisoner at the expiration of the period fixed in the act a right to then apply for a parole, to confer upon the board entire discretion as to whether or not any individual prisoner should be then given a parole. This was not to be determined from the good conduct alone of the prisoner up to that time, but it was intended that the board should examine not only his daily prison life and his conduct under the prison discipline, but further consider the nature of the offense for which he was sentenced, the term for which he was sentenced, and the portion thereof which he had served, his age, and life history, his habits, inclinations, disposition, and traits of character, and the probabilities for and against his reformation.

ID.—DECISION OF PAROLE COMMISSIONERS—CONCLUSIVENESS ON COURTS. The determination of the board, on any application for parole, is conclusive on the courts, regardless of the reasons or facts upon which it may be based.

ID.—STATUTORY CONSTRUCTION—WORD "MAY"—WHETHER MANDATORY. The word "may" when used in legislation is to be given its common and ordinary meaning and construed as permissive or conferring discretion. It is to be construed as mandatory only when it ap-

pears from the terms of the statute in which it is used that it was the clear policy and intent of the legislature to impose a duty, and not simply to confer a discretionary power, and when the public or third persons have a claim *de jure* to have the power exercised.

APPLICATION for a Writ of Mandate to be directed against Dennis M. Duffy et al., members of the State Board of Prison Directors of the State of California, and M. E. Noon, clerk of said board.

The facts are stated in the opinion of the court.

Carroll Cook, for Petitioner.

U. S. Webb, Attorney-General, and Raymond Benjamin, Chief Deputy Attorney-General, for Respondents.

LORIGAN, J.—This is a proceeding for a writ of mandate, and involves a construction of an act of the legislature entitled "An act to establish a board of parole commissioners for the parole of and government of paroled prisoners." (Stats. 1913, p. 1048.)

The provisions of the act pertinent to a consideration of the application of petitioner for this writ read as follows: "The state board of prison directors of the state shall have power to establish rules and regulations under which any prisoner who is now or hereafter may be imprisoned in any state prison, and who may have served one calendar year of the term for which he was convicted, may be allowed to go upon parole outside of the buildings and inclosure, but to remain while on parole in the legal custody and under the control of the state board of prison directors, and subject at any time to be taken back within the inclosure of said prison; and full power to make and enforce such rules and regulations, to grant paroles thereunder and to retake and imprison any convict so upon parole is hereby conferred upon said board of directors; . . . provided, however, that no prisoner imprisoned under a life sentence shall be paroled until he shall have served at least seven calendar years; provided further that no prisoner who has served a previous term in any state prison in this or any other state shall be paroled until he has served at least two calendar years, and no prisoner who

has had imposed upon him two or more cumulative or consecutive sentences shall be paroled until he has served at least two years of the aggregate time of such cumulative or consecutive sentences.''

The petition sets forth that petitioner has been confined in the state prison at San Quentin since July 18, 1912, under a sentence of five years for felony; that prior to the time of filing this petition his actual period of imprisonment exceeded one year and two months; that he had not served a previous term in any state prison in the state or in any other state, and that he had not had imposed on him more than one sentence of imprisonment; that the actual time of sentence of petitioner, when reduced by credits, pursuant to the statutory allowance, and deduction for good conduct, is three years and seven months, and that his conduct during his entire term of imprisonment has been exemplary; that he has conformed to all the rules regulating the behavior and duties of prisoners at said prison, and has never been punished or reprimanded for any violation thereof or any misconduct. The petition then further avers that under the provisions of the act heretofore referred to and on July 19, 1913, there accrued to petitioner under the act a right to make application to said board for parole and to be given a hearing thereon before said board and at the conclusion thereof, to an immediate release on parole, but that he is prevented by the said board from having his application therefor filed with the clerk of the board or considered or acted on by the board itself, by reason of the declared official attitude of said board toward the application of petitioner, which would render such application an idle, futile, and useless act in the premises; that this is due to a rule or regulation of the board passed in 1909 and designated in its printed book of rules as rule 5, which declares:

''Rule 5. Half term must be served. No application for parole shall be filed by the clerk until the prisoner shall have served one-half his sentence unless for some extraordinary reason the same shall have been recommended in writing by the warden with his reasons therefor and ordered filed by the affirmative vote of at least four members of the board.''

The relief asked by the writ is for a mandate requiring the clerk of the board of prison directors to forthwith receive

and file the application of petitioner for release on parole; that the board be commanded to hear such application and thereupon to grant the application of petitioner for release on parole during the remaining period of his term subject to be returned to prison for violation of any of the rules and regulations prescribed by the board governing the conduct of prisoners while on parole.

As simply a question of the construction of the act is involved in this proceeding, the matter is submitted for decision on demurrer interposed by respondents to the petition. The position taken by counsel for petitioner is that under the act a prisoner who is undergoing a first and only term of imprisonment and who has not been sentenced for life, is not only given an absolute right upon the expiration of one calendar year of his sentence to make application to the board of prison directors for parole and be accorded a hearing thereon, but further, that such prisoner is also entitled as a matter of statutory right to a parole after such hearing provided his conduct in prison has been good. The petitioner, belonging to the class of prisoners commonly known as "first termers" and coming within the "one year" provision of the act, complains of said rule of the board attempting to preclude him from making application for or being granted a parole until one-half of his sentence has been served, as an arbitrary and illegal prevention and denial of what he insists are his rights under the act.

The position of the respondents on the other hand is that the reference in the act to the periods of sentence to be served by prisoners amounts simply to a limitation upon the power of the board to grant paroles prior to the expiration of such periods; that no rights whatever are conferred on prisoners by the terms of the act, but that, subject to such limitations, the entire matter respecting the parole of prisoners, when and how applications may be permitted to be made to the board and heard and determined, and whether parole shall be granted or not as to any individual prisoner, is left entirely to the discretion of the board.

Considering now the construction to be put upon the terms of the act under the claims of the respective parties to this proceeding we address our attention to the first claim made by petitioner that as a "first termer" he was entitled at the

expiration of the calendar year of his term to make application for a parole which the board had no power to deny him by this rule.

Respondents assert that this claim of petitioner is entirely disposed of and the validity of the rule supported by a simple reference to what they claim is specific authority granted to make such a rule in the opening provision of the act where it is declared that the board "shall have power to establish rules and regulations under which any prisoner . . . may be allowed to go upon parole outside of the buildings and inclosure . . ." etc. But the authority so given has no relation whatever to prescribing rules and regulations as to when a prisoner shall make application for a parole or as to a hearing or action thereon by the board. It has reference solely to the adoption of rules and regulations under which prisoners shall be governed and controlled after they are admitted to parole and conditionally released from prison, and for the violation of which during such parole they may be retaken and reimprisoned. In fact, there is nothing in the act itself saying anything about applications or hearings for parole or anything about rules or regulations governing these matters. The authority of the board to make rules and regulations on the subject is not disclosed in the act, but proceeds from the implied power existing in all boards, independent of any express authorization on the subject, to adopt such rules as will enable them to efficiently discharge the duties imposed upon them.

In the absence, then, of any express grant in the act to the board of discretion to provide when applications shall be made by a prisoner for parole, the question is presented under the first contention of petitioner whether such provisions as are contained in the act reasonably construed disclose an intention on the part of the legislature to vest discretion in the board on that subject, or whether the intention is to give to a prisoner after the service of a specified period of his sentence, a right, at least, to make an application for a parole and to have a hearing and action of the board upon it. This question must be determined from a consideration of the language employed in the act construed in the light of the main objects and purposes sought to be attained through all parole legislation. It is not necessary to discuss at length these ob-

jects and purposes or to discuss them at all further than as their consideration may aid us in interpreting the intention of the legislature under the provisions of our parole law. That law is humanitarian in character and comports with legislation of a similar nature prevailing in various states of the Union. Under the old penitentiary system a prisoner was allowed his liberty only upon expiration of his term of sentence. The purpose and object of a parole system is to mitigate the rigor of the old, and while requiring the punishment of a prisoner by actual confinement for a fixed period of his term of sentence, still to provide a more humane management and prison discipline under which there is extended to those who may show a disposition to reform and whose reformation may reasonably be expected, a hope and prospect of liberation from the prison walls under the restrictions and conditions of a parole. It recognizes, that notwithstanding the commission of crime requires a measure of imprisonment as a penalty, still that the interests of society require that under prison discipline every effort should be made to produce a reformation of the prisoner, and proper measures adopted so that this may be accomplished. It realizes that prisoners are not always irretrievably bad but that there may exist sufficient good in many of them under which such reformation is possible and through which, if opportunity is given, it may be accomplished. The legislative policy manifested in the act was to provide such a system; one, whereby, notwithstanding fixed terms of sentence, a hope was to be held out to prisoners that through good conduct in prison and a disposition shown toward reformation, they might be permitted a conditional liberty upon restraint under which they might be again restored to society to actually work out their reformation and become useful members of the community, and to this end, the board was given certain powers and charged with certain duties.

It is claimed by respondents that this being all true, still, under the provisions of the act, details as to its accomplishment, and all matters respecting parole, are left to the discretion of the board, limited only to the extent that it may not grant parole until the specified term of service of imprisonment as to the different classes of prisoners referred to in the act has expired. As far as the limitation is concerned, it is true

that it must be taken as restricting the power of the board to grant a parole before the expiration of such periods, but in our opinion, the language used there, not being qualified or controlled by any other language of the act, was not intended merely to restrict the power of the board in that respect, but it necessarily implies that when these periods of service have expired a right to have a parole granted to them, if deemed worthy of it, was then conferred on prisoners of these various classes, and as incident to that right there was accorded to them the further right or privilege of their making application to the board therefor. In other words, that it was the intention of the legislature that there should be then given to them the right or privilege of applying for the benefit of a parole to be exercised by them on their own initiative under regulations to be prescribed by the board such as would directly and immediately thereafter permit them to avail themselves of this right.

Giving the act this construction does not at all hamper or interfere with any discretion which may be vested in the board as to granting or withholding parole, but really is in aid of the spirit of the act. The legislature, by permitting a parole after these periods of sentence, assumed that there might be prisoners who were at that time worthy of having the benefit of it; that in many instances, and particularly as to "first termers," service of sentence for a specified period would be sufficient punishment, and if it then appeared that a prisoner had shown an intention and disposition to reform, and that such reformation might be reasonably assured of accomplishment under the restrictions of a parole, the board might extend it to him. It was not expected by the legislature that the board, its individual members selected from the community at large, men of affairs and holding only periodical sessions in the discharge of the duties imposed upon them, could have knowledge of the case of each individual prisoner who might be worthy of being extended a parole, his previous conduct, his age, the offense for which he was committed or the circumstances surrounding it, his character or disposition as chastened by prison discipline, his inclinations toward a better life and other circumstances which would govern its action in a fair and just determination of whether reformation of the prisoner was reasonably assured,

and that it might be actually accomplished if he were given an opportunity to effect it under parole. It did not contemplate that the board should take the initiative and investigate the case of each prisoner, and the board so understood this in adopting the rule here in question which left it to the prisoner to make the application. But the condition as to when the application might be made the board had no right to impose. It had no authority to superadd a period of years beyond that which the legislature had itself definitely fixed when a prisoner might be admitted to parole, and the fixing of which by the legislature, as we have said, necessarily implied that he should then have the right to make an application to obtain it. If this were not the reasonable construction to be indulged in it would follow that the board might, in its discretion, require the service of any period of imprisonment it chose—half the term of sentence or three-fourths or longer—before it would entertain any application for parole. Service of an arbitrary fixed term which has relation to the matter of punishment cannot of itself furnish a proper or just standard by which it may be fairly determined whether or not a prisoner has repented his crime and evidenced a disposition to redeem himself, and may with safety to society be granted a parole under which to attain complete reformation. Terms of imprisonment imposed by the various courts of the state on different criminals may be, and in very many cases are, of unequal length when imposed for the same offense. The act divides prisoners subject to parole into three classes, among those being "first" and "second term" prisoners. The obvious intention of the legislature was to make the "first termers" the most favored class in the matter of parole. Naturally so, because first offenders are to a large extent more readily redeemable and entitled for that reason to more favorable consideration. Yet, as to prisoners coming within this class for similar offenses, sentences of unequal lengths of imprisonment are imposed. Under these circumstances, if it were intended by the legislature that the board might by rule arbitrarily fix service of half the term of a sentence, possibly amounting, as to a "first termer" under a long sentence, to many years beyond the year fixed in the act, a greater period of service might be required before he would be permitted

to file an application for a parole than if he were serving sentence as a "second termer." And in this connection it may be suggested without expatiating upon it, that as to first term prisoners upon whom is imposed a long term sentence, it can readily be conceived that though deemed to be prisoners the most susceptible to earliest reformation and to be most favorably considered as to parole, the prevention of an application by them until after years of imprisonment arbitrarily fixed under the rule had been undergone, would tend to defeat, rather than further, the very purpose and object of the act. None of these results may follow when the act is construed as extending the right to a prisoner to make application for parole at the end of the term specified in the act. Nor does this construction interfere at all with the large discretionary power which the board may possess over matters of parole if the other point made by petitioner, that the parole must be granted at the expiration of the periods fixed to prisoners whose conduct is good (which we shall presently consider) is untenable. It simply extends to any prisoner the privilege of making an application and having the board hear and dispose of it when the period fixed in the act as the time when he might be paroled has expired; a construction in harmony with the purpose of the legislature in creating a parole system, which is to permit the liberation of a prisoner on parole at the earliest period when permitted by law and when on a consideration of the merits of each individual case, parole ought, in the judgment of the board, to be granted.

This brings us to the other claim urged by petitioner that not only is he entitled to apply for parole at the end of the first calendar year of his sentence, but further entitled thereon, if his prison conduct during that period is shown to have been good, to a parole as matter of right. His position is that the word "may" used in the section with reference to a prisoner who has served one calendar year of his imprisomnent and providing that he "may be allowed to go on parole outside the buildings and inclosures" is to be construed as "must" or "shall," and thus construed, a mandatory duty is imposed upon the board to parole him; that while the language is permissive in form it should be construed as mandatory in effect. It is only on the theory of such

a construction that the claim of petitioner can be sustained because otherwise the legislature in the use of the word "may" in the section has clearly vested discretion in the board on the subject. The rule is that "may" used in legislation is to be given its common and ordinary meaning and to be construed as permissive or conferring discretion. It is only to be construed as mandatory when it appears from the terms of the statute in which it is used that it was the clear policy and intent of the legislature to impose a duty, and not simply to confer a discretionary power, and when the public or third persons have a claim *de jure* to have the power exercised, that it is to be construed in a mandatory sense. (*Kemble* v. *McPhail*, 128 Cal. 444, [60 Pac. 1092.]) Applying these rules to the provision in question we perceive nothing in the language used or in the policy or intent of the legislature which requires the word "may" to be given any mandatory construction or requiring that it be construed in any other than its ordinary meaning as extending a discretionary power to the board to grant or withhold parole as in its judgment may appear proper and advisable. Counsel for petitioner directs his discussion of the construction to be given to the act to the first provision thereof having a particular reference to "first term prisoners" and dwells with emphasis upon the peculiar consideration the legislature must have had for this class and its intention that they should be given an early release from prison and an opportunity for reformation. Doubtless, as heretofore discussed, this was the intention of the legislature in proper cases, but this in no way requires the mandatory construction which is contended for, nor compels a construction of the act otherwise than it is permissively written. In determining the intent of the legislature in that respect we must take into consideration the entire act, and not one particular phrase of it. Doing so we find as bearing significantly upon the claim as to prisoners who have served "one year" and as disclosing the intent of the legislature as to the liberation of any prisoner on parole, the further terms of the act as to such parole wherein it is "provided, however," and "provided further" that no prisoner sentenced for life shall be paroled until he has "served at least seven calendar years," nor shall a prisoner who has served a previous term be paroled until he has

"served at least two calendar years," nor shall one be paroled who has had cumulative or consecutive sentences, until he has "served at least two years of the aggregate time of such cumulative or consecutive sentences." Certainly as to these two and seven year classes of prisoners just referred to the board is not required to parole them at the expiration of two or seven years. The use of the term "at least" imports that entire discretion is left the board as to when, if at all, parole will be granted to prisoners coming within these classes after the specified term of service of imprisonment. This being true as to these classes there is no reason why a different intent should be attributed to the legislature in regard to the class of "first termers" and the word "may" which ordinarily imports discretion and as so construed shows a harmonious intent as applied to all classes, be construed as mandatory with reference to the particular class of first term prisoners when it is manifest that as to all other classes discretionary power to parole is given. On the contrary we are satisfied that the same intent as to the actual parole of prisoners pervades the entire act. It was not intended to nor did it confer any right whatever on any prisoner to be paroled at any fixed time or at all. The purpose of the act is to permit the liberation of prisoners from actual custody in the state prison under certain conditions and restrictions prior to the service of the full time fixed in the sentence of the trial court and when the board of parole is satisfied from an investigation and consideration of the case of any particular prisoner who has served the period of sentence specified in the act that there is such hope and probability of his reformation that he may be permitted to re-enter society under the restrictions and restraints of parole. It is idle to say that the legislature intended that the fact that a prisoner had served one year or any other period of a term less than the entire term for which he was sentenced, coupled with the further fact that his prison conduct during such period had been good, was sufficient to show that his reformation had been accomplished and, hence, entitled him to a parole. In fact, under petitioner's theory of construction it was the intention of the legislature to invest the board with a mere ministerial duty of discharging prisoners on parole at the expiration of the periods fixed in the act simply on a show-

ing that their prison conduct had been good and without relation to the term of sentence which was imposed upon them or a consideration by the board of any matters at all which would ordinarily and reasonably be taken into consideration in determining whether there was such a reformation as would entitle the prisoner to a conditional liberty. Nothing of this kind could justly be attributed to the legislature. In our opinion, the intention of the legislature was, while giving any prisoner at the expiration of the period fixed in the act a right to then apply for a parole, to confer upon the board entire discretion as to whether any individual prisoner should be then given a parole or not. This was not to be determined from the good conduct alone of the prisoner up to that time but it was intended that the board should examine, not only his daily prison life and his conduct under the prison discipline, but further consider the nature of the offense for which he was sentenced, the term for which he was sentenced, and the portion thereof which he had served, his age, and life history, his habits, inclinations, disposition, and traits of character, the probabilities for and against his reformation, and from these and such other considerations as would enable it to reach a fair and just conclusion in the case of each particular prisoner determine whether or not he was worthy of release from actual confinement under the restrictions of the parole law with a view to his ultimate reformation and without danger to society. The whole matter of actual release upon parole was intended to be left to the judgment and discretion of the board to be exercised as it might be satisfied that justice in the case of any particular prisoner required. There is no public interest disclosed in the act which demands a different interpretation of these provisions, but on the contrary, it is obvious that public interest is best subserved by giving the word "may" its usual and ordinary meaning as extending to the board a permissive and discretionary power as to the granting of a parole in the case of any particular prisoner.

We have disposed of the only questions properly involved in this application. Our conclusions are that under the act in question petitioner is entitled as a matter of right to present and file with the board an application for parole as a prisoner who has served one calendar year of his term of

sentence and to a hearing thereon and determination thereof by the board within a reasonable time thereafter; that rule 5 of the board, as an attempt to limit and restrict this right, is illegal and void; that no right is given under the act to any prisoner to be granted a parole at any given time or at all and that the matter of granting or withholding it is, under the act, committed entirely to the judgment and discretion of the board.

In conformity with these views it is ordered that a writ of mandate issue commanding the state board of prison directors to forthwith receive and file the application of petitioner for release on parole, and further commanding said board at its next regular meeting or session, or within a reasonable time thereafter, to proceed to hear and consider such application and take such action thereon as in its judgment on the merits of the application it deems proper.

Henshaw, J., and Melvin, J., concurred.

SLOSS, J., and ANGELLOTTI, J., concurring.—We concur: The opinion of Mr. Justice Lorigan holds that the board of prison directors has not the power, by a rule of universal application adopted in advance, to deny to a first termer who has served one year, the right to ask for a parole and to have his request considered on its individual merits. With this we are in entire accord.

When the board takes up any petition for parole, it has the right, however, to consider, as one of the factors bearing upon the exercise of its discretion, the length of the term for which the petitioner was sentenced and the proportion of that term which has actually expired. We do not understand that the main opinion is intended to express a different view. It declares that service of a defined proportion of the term, beyond the minimum of one year fixed by the act, cannot be made an absolute condition precedent to the right to apply for a parole, regardless of all other considerations bearing on the merits of the particular case. But it does not, as we read it, mean to hold that the length of time served, although more than one year, cannot be taken into account by the board in deciding whether a prisoner should or should not be paroled. We are satisfied, too, as is, in effect, declared in the

CLXVII Cal.—41

main opinion, that the determination of the board, on any application for parole, is conclusive on the courts, regardless of the reasons or facts upon which it may be based.

SHAW, J., dissenting.—I dissent from the opinion and reasoning of the court in this case. The Parole Act is, in my opinion, an exercise of clemency on the part of the state, and the execution thereof by the board of prison directors constitutes a mere exercise of grace and mercy on the part of the state through its authorized officers toward persons who have been convicted of crime. I do not think it was the intention of the legislature to create any rights whatever in any prisoner, with respect to parole, which can be deemed justiciable. The act limits the power of the board in certain particulars as, for example, that an ordinary prisoner must have served one calendar year, a life-termer seven calendar years, and a second termer two calendar years, before the act can apply to him at all. But after those periods have expired the entire matter is left in the absolute discretion of the board. No court should have power to supervise or control its action, either in establishing rules, or in exercising the clemency of the state after the rules have been established. The declaration of the board in the rule that applications for parole will not be received until one-half of the term of the prisoner has expired, is nothing more nor less than a declaration by the board, in the exercise of its discretion, that good policy requires that prisoners should not be eligible to parole before that time, and this, according to my conception of the purpose and language of the act, is a matter for the board to determine and is not subject to review or control by the courts.

In any case the only right granted to a prisoner by the decision of the court would seem to be utterly useless. The prisoner is given the poor comfort of being allowed to have his application filed by the clerk and received and considered by the board, with the statement that after receiving it the board may refuse it with or without reason, and that their action is beyond review and final. I can see no result from this ruling that will be beneficial to the prisoners, and it will only tend to create discontent and disorder and make the task of the management of these institutions more difficult than before.