[Crim. No. 4538. In Bank. June 7, 1944.]

In re ALBERT M. STEWART, on Habeas Corpus.

Albert M. Stewart, in pro. per., for Petitioner.

Robert W. Kenny, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

CURTIS, J.—Petitioner herein is an inmate of the State Prison at Folsom, California. He is now, and has been ever since the 7th day of June, 1928, in the custody of the warden under and by virtue of a warrant issued out of the Superior Court of Sacramento. By said warrant the warden of said State Prison was commanded to cause petitioner to be put-to death in the manner and by the means then provided by the laws of this state for the execution of the death sentence. ▮ Upon application of petitioner and on March 11, 1931, Hon. James Rolph, Jr., as Governor of the State of California, commuted "the sentence of death imposed on Albert M. Stewart on condition that he be imprisoned during the term of his natural life in the State Prison at Folsom." At a later date, after petitioner had served a considerable period of time beyond seven years of his life sentence, he applied for parole under the Parole Law of 1913 and section 1168 of the Penal Code. The parole law or statute was incorporated into the Penal Code in 1941, and section 3046 of said code provides as did the Parole Law of 1913 that "no prisoner imprisoned under a life sentence may be paroled until he has served at least seven calendar years." Section 1168 provides for the indeterminate sentence. In response to petitioner's application for parole, the Board of Prison Terms and Paroles informed him that "due to the particular wording of your commutation of sentence, which said in effect 'for your natural life,' . . . no action can be taken on a parole application in your case by the Board of Prison Terms and Paroles until such time as this provision is removed from the record."

On February 21, 1944, petitioner filed herein his petition for a writ of habeas corpus for the purpose of testing his right to a hearing before the board upon his application for parole, and to "be restored to his lawful rights." Respondents do not question the applicability of the remedy now

sought by petitioner to determine his right to a hearing upon said application before the board. This court granted the writ. The respondents have filed their return thereto. The facts are not in dispute and are substantially as set out above. The only problem before us is to determine the meaning of the words "during the term of his natural life" as used by Governor Rolph in his order commuting petitioner's sentence.

Petitioner contends that there is no difference between a term of imprisonment for life and one for the natural life of the prisoner; that if a prisoner is sentenced to prison for life he must serve during his entire natural life, unless sooner pardoned or placed on parole; and that had Governor Rolph intended that petitioner should serve his life sentence without parole, it would have been a simple matter for him to have inserted in his order the words "without parole" or words of similar import. On the other hand, the Board of Prison Terms and Paroles, as its members are advised by the attorney general, contends that some effect must be given to the word "natural" as used in Governor Rolph's order of commutation; that had the Governor intended that petitioner should serve only an ordinary life sentence, as that term is usually used in criminal judgments, he would not have taken the pains to definitely state that petitioner "should be imprisoned during the term of his natural life"; and that had the Governor intended that petitioner's term of imprisonment was to be subject to parole, he could easily have, and no doubt would have, so stated in his order.

Our attention has been directed to but a single instance in which the words "imprisonment during his natural life" have been used in our Penal Code, and that is in section 671, which reads as follows:

*"Imprisonment for life:* Whenever any person is declared punishable for a crime by imprisonment in the state prison for a term not less than any specified number of years, and no limit to the duration of such imprisonment is declared, the court authorized to pronounce judgment upon such conviction may, in its discretion, sentence such offender to imprisonment during his natural life, or for any number of years not less than that prescribed."

Evidently the term "natural life," as used in this section of the code, cannot be given the meaning claimed for it by the Board of Prison Terms and Paroles, and it is just as evi-

dent that it is used in this section as synonymous with the word "life." No one, we think, would contend for a moment that a prisoner sentenced under this provision of the code would not be entitled to the benefit of the parole law of the state.

There has been received in evidence at this hearing a certified copy of an order by Governor Rolph of date July 12, 1932, commuting a death sentence to life imprisonment, which in part reads as follows:

"I, James Rolph, Jr., Governor of the State of California, by virtue of the authority conferred upon me, do hereby commute the sentence of Raymond C. West to imprisonment for life, provided, however, this commutation is made upon the following conditions: His imprisonment shall be for the term of his natural life. During his imprisonment, he will faithfully comply with, all the rules and regulations governing the penitentiary wherein he may be imprisoned. He will not hereafter be released from imprisonment and will not apply for parole to the Board of Prison Terms and Paroles or to any Board, Commission or officer authorized by law to grant parole, nor will he during his imprisonment accept parole from any such Board, Commission or Officer."

While each of the two orders of Governor Rolph provide for imprisonment for the natural life of the prisoner, we think it would be unreasonable to hold that they mean one and the same thing and that they each provide for life imprisonment without parole. On the other hand, as the West order expressly provides for imprisonment for natural life without parole and the order here in question provides simply for imprisonment for natural life, and says nothing about parole, a reasonable construction to be given to the latter order would be that the limitation as to parole was expressly omitted therefrom. The order of Governor Rolph in the West application expressly and meticulously, and we might add laboriously, imposed as a condition upon which the order was made that the prisoner will neither apply for nor accept parole. Had he any intention to impose like limitations upon the order commuting petitioner's sentence, it is only reasonable to expect that he would have used, if not the same language that is found in the West order, at least some word or words which would indicate that a similar condition was intended to be imposed upon petitioner. Finding none, we

think it is apparent that it was not the intention of Governor Rolph, in commuting petitioner's sentence, to impose as a condition of his order of commutation that petitioner should not be subject to the parole law of the state.

It might further be observed that if the order of commutation in petitioner's case is ambiguous or uncertain, and is really capable of two constructions equally reasonable, a construction should be given it which would be favorable to the prisoner. ▉ The parole law is humanitarian in character and its purpose and object is to mitigate the rigor of the old penitentiary system. (*Roberts* v. *Duffy,* 167 Cal. 629, 634 [140 P. 260].)

▉ It is a fundamental rule of law that no citizen should be deprived of his liberty for the violation of a law which is uncertain and ambiguous (*In re Peppers,* 189 Cal. 682 [209 P.896]; *People* v. *Pace,* 73 Cal.App. 548 [238 P. 1089]) and the same situation exists where one's liberty is questioned by an order or judgment which is not plain and certain in its terms. (8 Cal.Jur. 465, § 482; *Ex parte Harrison,* 63 Cal. 299.) This is especially true where the questioned order or judgment is susceptible of two interpretations, one of which is favorable and the other is adverse to the rights and privileges of the person affected thereby.

▉ It is our opinion, and we therefore hold, that petitioner is entitled to all the benefits and privileges of the parole law of the state and that it is the duty of the Board of Prison Terms and Paroles to grant him a hearing under his application filed with said board. However, this does not entitle petitioner to be released from his present custody by the respondent warden of the State Prison at Folsom, California, and he is therefore hereby remanded to the custody of said warden.

Gibson, C. J., Shenk, J., Carter, J., and Traynor, J., concurred.

SCHAUER, J.—I dissent. The majority opinion does not even mention the controlling question in this case. It assumes, without benefit of factual or legal basis, that, unless otherwise expressly provided in the order of commutation, the petitioner has a legal status no more restricted than that of a prisoner (twice convicted of felony) who has been sentenced to a term of imprisonment for life. Having made such

assumption it declares, "The only problem before us is to determine the meaning of the words 'during the term of his natural life' as used by Governor Rolph in his order commuting petitioner's sentence." Such statement of the problem is wholly inadequate to this case.

If it were the function or prerogative of a governor, in commuting a death sentence, to vacate the sentence which the court had imposed and to pronounce a new sentence and issue a new commitment, and if in this case those things had been done, then the discussion of law in the majority opinion might be pertinent to the matter in hand. But no such matter is before this court.

This petitioner was convicted in the superior court of murder in the first degree. Pursuant to the law enacted by the people of this state, through their chosen representatives, the petitioner was sentenced to death. The court duly issued a commitment which contains the following language: "Now, Therefore, this warrant is to command you, the said Sheriff of the County of Sacramento, State of California, to take into your custody the said Albert M. Stewart, alias Zephic Saunders, who answers his true name to be Albert M. Stewart, and to keep him safely and in close confinement, and within ten days from the time of this judgment, to-wit, June seventh, A.D. 1928, deliver him into the custody of the Warden of the State Prison at Folsom, in the State of California, and at the same time deliver this warrant to the said Warden.

"And You, the Warden of the State Prison at Folsom, State of California, are hereby ordered and commanded to execute the said judgment by receiving into your custody the said Albert M. Stewart, alias Zephic Saunders, who answers his true name to be Albert M. Stewart, and keeping him safely and in close confinement until Friday, the 17th day of August, A. D. 1928, upon which day, between the hours of Nine (9) o'clock a.m. and Six (6) o'clock p.m., you will take him, the said Albert M. Stewart, alias Zephic Saunders, who answers his true name to be Albert M. Stewart, to a place of execution within the walls of the said State Prison at Folsom, State of California, and then and there hang him by the neck until he be dead."

The above-quoted provisions of the commitment truly follow and, in effect, constitute the judgment which was pro-

nounced. It was that judgment which Governor Rolph *commuted*. He did not vacate or set aside that judgment; he did not pronounce a new and different sentence. His only power in the premises was that given him by section 1 of article VII of the state Constitution; i. e., ''the power to grant reprieves, pardons, and commutations of sentence, after conviction.''

Petitioner still remains in prison under the sentence imposed by the superior court and the commitment issued by that court. It is only by the force of the court's judgment and the authority evidenced by the commitment that petitioner is held in custody; the only force of the commutation is that he has not been hanged. The commutation of sentence operates, in effect, as a mere stay of execution of that portion of the sentence which required that petitioner be put to death. The language employed by Governor Rolph in effecting the commutation seems not ambiguous or uncertain to any degree. It is, in fact, a clear and concise statement. It was executed by the Governor on recommendation of four associate justices of this court. It reads as follows: ''As the Honorable Justices who signed the letter are familiar with the facts of the case as disclosed by the record, I consider myself bound to act favorably upon their recommendation and do, therefore, commute the sentence of death imposed upon Albert M. Stewart on condition that he be imprisoned during the term of his natural life in the State Prison at Folsom.''

The above-quoted commutation is characterized as much by language which is not used as by that which is used. The Governor says, ''I . . . commute the sentence of death imposed upon Albert M. Stewart.'' He does *not* say, ''I commute *to life imprisonment* the sentence of death.'' He says merely, ''I . . . commute the *sentence of death* imposed upon Albert M. Stewart *on condition* that he be imprisoned during the term of his natural life in the State Prison at Folsom.'' The word ''commute'' in legal proceedings in criminal cases is ordinarily used with context to express the substitution for one penalty of another which is lighter. Here, it is obvious that Governor Rolph used it to denote a suspension of execution of that portion of the sentence which otherwise required —and, save for the continuing suspension, still requires— that the petitioner be put to death. But this suspension is expressly made subject to the ''condition that he be impris-

oned during the term of his natural life in the State Prison at Folsom.'' The controlling point in the case is that the provision for imprisonment ''during the term of his natural life'' is not a sentence which the Governor imposes; *it is a condition concurrent and continuing* on which the commutation of ''the *sentence of death* imposed upon Albert M. Stewart'' by the court is dependent. The moment that Albert M. Stewart ceases to be ''imprisoned during the term of his natural life in the State Prison at Folsom,'' that moment the commutation ceases and petitioner then remains subject to the whole of the penalty specified in the judgment pronounced by the superior court, under which judgment he is detained in prison awaiting execution except as stayed and suspended by the commutation.

The reference in the majority opinion to the language used in a commutation assertedly issued by Governor Rolph to one Raymond C. West is apparently an attempt to justify the conclusion reached in the instant case by a comparison of the language used in this commutation with the language used in that one. The West case has not the slightest relevancy or materiality to the case at bar. Neither the language used in that case nor that used in any other case can alter the plain import of the simple words used in this case or add words which are not used.

Before the commutation was issued the petitioner was under sentence to pay the extreme penalty. The law required that he be held in custody until he was put to death. *This was actually imprisonment for life without power of parole.* The commutation is in the nature of a bounty or charity from the governor. The majority opinion treats the matter as though it were the function of the commutation to take away or limit some rights which the petitioner would otherwise have and construes the commutation as giving him all rights which are not unequivocally negatived. That is not at all its function nor is the basis of construction tenable.

The commutation starts operating on a man against whom the sentence of death has become final. It merely grants some privilege or substitutes some lesser penalty or releases the subject from some part of the penalty which has been imposed. The petitioner was being held in custody *which was to endure until his death.* That was life imprisonment without right of parole but it was not imprisonment for the ''term

of his *natural* life'' because his natural life term was to be cut short by his execution. All that Governor Rolph's commutation purports to do is to conditionally relieve the petitioner of the cutting short of his natural life. It still leaves the petitioner in custody for life without the right of parole but, by operation of the commutation, that custody is made to perdure for ''the term of his natural life'' instead of until the term of his natural life is cut short by execution. The commutation as written does not purport to, and cannot legitimately be construed to, substitute a sentence of life imprisonment subject to parole in place of the sentence of death with its concomitant of imprisonment without parole until death.

The burden is not on the State to show that the commutation deprived the petitioner of the right of parole or of any other right. The burden, rather, is on the petitioner to show what rights or privileges the commutation conferred on him. Before the commutation was issued, did the petitioner have the right to be held eligible for parole? If he did not have that right then he does not possess it now unless the commutation granted it to him. And obviously the commutation did not grant it to him: the Governor declared, ''I . . . commute the sentence of death . . . on condition that he be imprisoned during the term of his natural life in the State Prison at Folsom.'' Since the sentence which the Governor was commuting carried with it imprisonment without parole for the full term of petitioner's life until that life was to have been cut short by execution, if the only effect contemplated by the Governor was to relieve the petitioner of the cutting short of the term of his natural life by execution, it is difficult to conceive of any form of expression, not offending tautologically, which would be more apt to accomplish precisely that effect than the language which was used. Governor Rolph was relieving the petitioner from execution on an appointed day; i. e., he was permitting petitioner to live out ''the term of his natural life.'' If that was the full extent of the bounty the Governor intended to confer it necessarily meant that the imprisonment of petitioner would perdure for the full term of his *natural* life instead of only for that portion of such term as would have elapsed prior to the execution. That —no more, no less—is the import of the words which were used.

I do not imply herein any view whatsoever as to whether the petitioner should or should not be granted a commutation

which would entitle him to be considered as eligible for parole. That is not, at least at this time, a problem for this court. The Constitution of California vests the pardoning and commutation powers exclusively in the governor subject only to the recommendation of a majority of the justices of this court in cases "where the convict has been twice convicted of felony." (Cal. Const., art. VII, § 1.) This court should be as zealous in protecting the executive and legislative branches of government against encroachments by the judicial as it is in guarding its own field against the trespass of others.

The petitioner in this case may apply to the governor for a new and different commutation giving him the privilege he wants and the governor, by the constitutional provision above mentioned, is vested with the power to determine such application subject to the recommendation of a majority of the justices of this court. But this court should not invade the province of the governor by reading into the commutation issued by Governor Rolph a privilege which he did not write.

The writ should be discharged and the petitioner remanded to the custody of the warden of the State Prison at Folsom to be there held "during the term of his natural life" under the sentence of death as conditionally commuted, and not under any assumed new and different sentence of so-called life imprisonment subject to the right of parole.

Edmonds, J., concurred.